# SUPREME COURT — APPELLATE DIVISION — FIRST DEPARTMENT.

## February 1, 1918.

## THE PEOPLE v. JOSEPH SHENK et al.

(181 App. Div. 753.)

1. PUBLIC NUISANCE—DISORDERLY HOUSE—EVIDENCE JUSTIFYING CONVIC-TION.

Upon the trial of an indictment for maintaining a public nuisance, to wit, a disorderly house, testimony that an apartment house leased by one of the defendants, some of the apartments being leased by his codefendant, was openly frequented by prostitutes, who with their companions quarreled, used improper language and made indecent exposures before uncurtained windows, all of which both defendants had knowledge and willfully permitted the house to be so maintained, justifies a conviction of the crime charged.

2. SAME—INSTRUCTIONS TO EMPLOYEES AS TO REPORTING IMPROPER USE OF PREMISES PROPERLY EXCLUDED.

Where upon the trial the sole questions were the actual use to which the house was put, and the actual knowledge thereof of defendants, evidence as to instructions given to the janitor, elevatorman and hallman, to report any improper use of the apartments, was properly excluded.

3. SAME.

Permitting a witness to designate the action of one of the defendants in tacking a paper upon the door of one of the apartments as a " cover," the only inference which was within the province of the jury, could not be considered prejudicial to the defendant.

4. SAME—DUTY OF TRIAL JUDGE TO AVOID CREATION OF PREJUDICE IN FAVOR OF DEFENDANTS.

It is the duty of a trial judge to so conduct a criminal trial as to avoid if possible the creation of any undue prejudice in favor of the defendants, as against policemen, the necessary witnesses for the prosecution.

5. SAME.

The province of the jury was invaded where the trial judge asked more than twelve hundred questions indicating his bias, both sides being represented by able counsel.

6. SAME.

   But where the court admonished a juror for misconduct and at once offered counsel for the defendant a mistrial, the refusal thereof constitutes a waiver of the right to a new trial though sought on other and different grounds.

APPEAL by the defendants, Joseph Shenk and another, from a judgment of the Court of General Sessions of the Peace in and for the County of New York, Part VI, entered in the office of the clerk of said court on the 29th day of May, 1916, convicting them of a misdemeanor in maintaining a public nuisance, to wit, a disorderly house.

*William M. K. Olcott* of counsel (*Theodore B. Chancellor, Isidore D. Morrison* and *Jacob R. Schiff* with him on the brief; *Olcott, Gruber, Bonynge & McManus,* attorneys), for the appellants.

*Robert S. Johnstone* of counsel (*Edward Swann, District Attorney*), for the respondent.

SMITH, J.:

The defendants were convicted under the third count of the indictment, which charges them with the crime of maintaining a public nuisance, in that they did unlawfully keep and maintain a certain common, ill-governed house, being the same house mentioned and described in the first count of the indictment, and in that house certain persons, both men and women, of evil name and fame, did frequent and come together at unlawful times, as well in the night as in the day, and then and at all times did there remain " tippling, drinking, gaming, cursing, swearing, quarreling, rioting, whoring, making great noise, and otherwise misbehaving themselves, unlawfully and wilfully [the defendants] did permit and suffer to the great annoyance, injury and danger to the comfort and repose of a great number of persons, good citizens of our State, there residing, and passing

and repassing, to the great offense of public decency and to the common nuisance of the said citizens, against the form of the statute in such case made and provided."

The house is situate at 62 West One Hundred and Seventh street in the borough of Manhattan. It is an apartment house, comprising various apartments, the entire house being leased by the defendant Shenk. A large number, if not all, of the apartments were subleased by the defendant Glasser.

It is not my object to specify in detail the evidence of the unlawful character of the house. It is sufficient to say that we have carefully examined the evidence and we are well satisfied with the conclusion of the jury that this house was frequented by prostitutes, with their companions, openly; that there was much disorder, quarreling and improper language used, with open windows, and indecent exposures before windows uncurtained, at different times of the day and night. We are satisfied also with the finding of the jury that both defendants had knowledge of the character of the house and its inmates, and willfully permitted the house to be so maintained, so that it became a public nuisance as defined by law.

The defendant Shenk had been arrested a year before upon a similar charge, at which time four women residents of his house were arrested and convicted as public prostitutes. The prosecution of the defendant Shenk was not pressed, however. The witness Jones, at the time of the arrest of the defendant Shenk, told him that there had been no improvement in the premises, and that the place was filled up again with prostitutes and pimps and other disorderly characters, and that they were going to hold him responsible to clean that building out, and that he had better put them out of there. Shenk replied: " I will put nobody out." The witness Sutter then told the defendant Shenk that he had better get the pimps and prostitutes out of there, to which Shenk made no reply. This also was sworn to by the witness Sutter.

These two witnesses were both police officers. The jury had the right to believe their testimony. Shenk for a part of the time had an apartment in the building, and Glasser lived next door and was there every night. The use of the house, therefore, must have been known to both of these defendants. The conviction must stand, unless in the course of the trial the court committed some error which in the interest of justice calls for a new trial of the action.

One of the errors claimed is the refusal of the court to allow defendants to show by the janitor of the building that the janitor had received instructions concerning the conduct of the house and what these instructions were. Similar questions were put to the elevatorman and the hallman Bowen, and were also excluded, and it was claimed on the argument that the defendants desired to show by these men that these servants were instructed to notify Shenk of any improper use of the apartments. There was no question as to whether the defendants used reasonable care in the conduct of the building or as to what effort they made to ascertain its use. The sole questions were, *first,* as to the actual use; and *secondly,* as to the actual knowledge of the defendants as to that use. If the defendants had been allowed to show any instruction to the servants to report to the defendants any improper use, with the finding upon abundant evidence that the apartments were improperly used, such evidence would have shown the probability of such information having been conveyed to the defendants, which would harm the defendants rather than help them. No tenants were removed by defendants except after conviction as prostitutes. If, as has been found, the defendants had knowledge of an improper use of the premises, instructions to their servants can neither mitigate nor atone for their unlawful conduct, nor can it avail the defendants if they gave instructions to their servants not to permit the improper use of the premises if, to their knowledge, these instructions, if given, were never carried out.

One witness was improperly allowed to designate the action of the defendant Shenk as a "cover," when Shenk tacked a paper upon the door of one of the apartments. This was the inference that the district attorney sought to draw from the act, and was apparently only an inference which it was within the province of the jury to draw, and it is hardly possible that this apparent inference could have prejudiced the defendants with the jury. There are other exceptions urged to the admission and exclusion of evidence, none of which deserve serious consideration, as they are all trifling in their character.

There are further objections made to the charge of the court, but a careful reading of the charge would indicate that they are entirely without substantial foundation. It appears all through the trial that the defendants were seeking to arouse a prejudice against the policemen's evidence, upon which such convictions largely must rest. One question, for example, asked of a policeman witness was whether he was a member of " the whore house squad." It was not only the right but the duty of the trial judge to so conduct the trial as to avoid, if possible, the creation of any undue prejudice in favor of the defendants as against policemen, the necessary witnesses for the People. While in this endeavor the trial court may have gone further than was necessary in his commendation of the policemen witnesses and of the police force of the city of New York, and of their right to strive for advancement in the service, nevertheless he was careful to caution the jury that they had no right to commit perjury for any reason or to be corrupt for any reason, or to do any wrongful act.

The trial court repeatedly in his charge instructed the jurors that they were the sole judges of all questions of fact and of the credibility of witnesses, and that the defendants should be given the full benefit of any reasonable doubt. We are unable to find in the charge any legal error or any attempt to influence the jury to give any undue consideration to the testimony of

the witnesses for the People or to create any undue prejudice against the defendants or their witnesses.

The burden of the appellants' complaint upon this appeal, however, is that the trial was so conducted by the court, both by his interference with the trial in asking many questions, and by the nature of the questions asked and his characterization of the evidence of the witnesses, that it amounted to a usurpation by the court of the functions of the jury, to the material prejudice of the defendants in the action. While the court in its charge to the jury stated that he had not intended to indicate in any way his opinion upon any question of fact in the case, or as to the credibility of any witnesses, the record indicates that whether intentional or not, the conduct of the trial is subject to grave criticism. It was stated by counsel and not contradicted that the trial judge himself asked over 1,200 questions, in an action wherein both the People and the defendants were represented by able counsel. An interference to this extent by the court with the trial of a case was clearly against the rules of proper procedure and fair play, and could not have existed without a clear indication to the jury as to the attitude taken by the court, both in respect to the merits of the case and to the credibility of the witnesses. Moreover, the questions put to the witnesses and the comments made upon their testimony by the court did constitute in this case an unwarrantable usurpation of the province of the jury. They indicate the mind and bias of the trial judge in no doubtful manner, and no disavowal of such intention made in the charge could disabuse the minds of the jurors of the impression created by such action. We are of the opinion that the defendants have just cause to claim a mistrial of this case from the conduct of the trial judge, if it were not for a fact that we deem to be a waiver upon the part of the defendants' counsel of the right to a new trial upon such ground. Near the end of the trial, the court, about to take a recess, admonished the twelfth juror that he was not to talk as

much as he did, and that he was not to make up his mind until the evidence was all in. Of this admonition no criticism can be made, as it was the right as well as the duty of the trial judge to admonish the juror if he was misbehaving. After such admonition, however, the court said to the defendants' counsel: "The Court: Now, if you want a mistrial, Mr. Levy, you can have it. I was forced by the conduct of this man to refer to him not only to-day, but several times. If you want to go to the jury, all right. If not, I will give you a mistrial. Mr. Levy: That places counsel in a very embarrassing situation. The Court: You want a mistrial, or you don't? Mr. Levy: Certainly not, sir. I can trust this jury." It is immaterial upon what ground the court was willing to give the defendants a new trial. Instead of taking a new trial the defendants, through their counsel, chose to proceed with the trial. It has been often held that a party cannot experiment with the court. The defendants cannot refuse a new trial offered and take their chances with the jury, as they did, and thereafter, upon an adverse verdict, claim error for which they might have taken a new trial at that time. Defendants' counsel could not at that time have deemed his case to have been seriously prejudiced by the trial judge or he would have accepted the opportunity for a retrial. It is not improbable that the defendants deemed that their case was stronger with the jury by reason of the adverse attitude of the trial judge during the trial. But whatever their reason for refusing to accept the new trial thus offered, after they had taken their chance with the jury and been beaten, justice does not require the granting of a new trial at this time by reason of any hostile attitude of the court, a remedy for which was thus offered them and refused.

After this opportunity so given at a time when the trial was nearly finished, there was nothing in the conduct of the trial which would prejudice the defendants to any greater extent and for which this judgment must be set aside. The jury was fully

instructed that the defendants should be given the benefit of all reasonable doubts, and that the determination of the facts was entirely within their province and not within the province of the court and should be determined without any reference to any impression which may have been created in their minds by any act of the court.    The guilt of the defendants was so clearly shown that the jury could hardly have reached a different conclusion from the one expressed by their verdict, and I am unable to find any substantial error for which the defendants should be given another chance with another jury.

The judgment of conviction should, therefore, be affirmed.

CLARKE, P. J., LAUGHLIN, SCOTT and DOWLING, JJ., concurred.

Judgment affirmed.