THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* McKINLEY REALTY AND CONSTRUCTION COMPANY, Appellant.

First Department, March 15, 1918.

Tenement House Law — constitutionality — liability of owner of tenement houses used for purposes of prostitution — defense — lease of premises.

Section 109 of the Tenement House Law, prohibiting the use of a tenement house for certain purposes, is not unconstitutional because it attempts to declare a violation thereof a misdemeanor, without proof of guilty knowledge on the part of the owner of the real estate.

Under the first clause of section 124 of the Tenement House Law the phrase " Every person who shall violate or assist in the violation of any provision of this chapter " is broad enough to cover any one who actively or passively produces, brings about or knowingly permits to exist the condition forbidden, *e. g.*, the use of a tenement for purposes of prostitution.

Hence, an owner of a tenement house who, with notice or knowledge that it is being used for immoral purposes, takes no effective steps to end such use, is a party to the violation of the statute, and cannot avoid responsibility upon the ground that the premises have been leased to other parties, and that it was not itself in possession when the acts complained of occurred.

APPEAL by the defendant, McKinley Realty and Construction Company, from a judgment of the Municipal Term of the Court of Special Sessions of the City of New York, Part I, rendered against it on the 24th day of May, 1916, convicting it of a violation of section 109 of the Tenement House Law.

*Jacob R. Schiff* of counsel [*Morrison & Schiff*, attorneys], for the appellant.

*Charles J. Nehrbas* of counsel [*Terence Farley* with him on the brief; *William P. Burr, Corporation Counsel*], for the respondent.

DOWLING, J.:

The defendant, as the owner of the premises 504 and 506 Lenox avenue, borough of Manhattan, city of New York, has been convicted of violating section 109 of the Tenement House Law, in that various apartments in said premises were used for the purposes of prostitution or assignation.

Section 109 of the Tenement House Law (Consol. Laws,

chap. 61 [Laws of 1909, chap. 99], as amd. by Laws of 1913, chap. 598)* provides as follows:

" Prohibited uses. No tenement house, or the lot or premises thereof shall be used for a lodging house or stable, or for the storage or handling of rags. No tenement house or any part thereof or the lot or premises thereof shall be used for the purpose of prostitution or assignation of any description. No horse, cow, calf, swine, sheep or goat shall be kept in a tenement house or on the same lot or premises thereof except that, outside of the fire limits, not more than two horses may be kept on such lot or premises, provided they are stabled at least twenty feet distant from any building used for living purposes, and that such stabling is not detrimental to health in the opinion of the department charged with the enforcement of this chapter."

Section 124 of the same law† provides as follows:

" Penalties for violations. Every person who shall violate or assist in the violation of any provision of this chapter shall be guilty of a misdemeanor punishable by imprisonment for ten days for each and every day that such violation shall continue, or by a fine of not less than ten dollars nor more than one hundred dollars if the offense be not wilful, or of two hundred and fifty dollars if the offense be wilful, and in every case of ten dollars for each day after the first that such violation shall continue, or by both such fine and imprisonment in the discretion of the court; provided, that the punishment for a violation of section one hundred and forty of this chapter shall be a fine of fifty dollars; and provided further, that the penalty for incumbrance of a fire escape by an occupant of the tenement house shall be a fine of ten dollars, which the nearest police magistrate shall have jurisdiction to impose. The owner of any tenement house or part thereof, or of any building or structure upon the same lot with a tenement house, or of the said lot, where any violation of this chapter or a nuisance exists, and any person who shall violate or assist in violating any provision of this chapter, or any notice or order of the department charged with its enforcement, shall

---

* Since amd. by Laws of 1916, chap. 318.— [Rep.
† Since amd. by Laws of 1916, chap. 319.— [Rep.

also jointly and severally for each such violation and each such nuisance be subject to a civil penalty of fifty dollars. Such persons shall also be liable for all costs, expenses and disbursements paid or incurred by said department, by any of the officers thereof or by any agent, employee or contractor of the same, in the removal of any such nuisance or violation. Any person who having been served with a notice or order to remove any such nuisance or violation, shall fail to comply with said notice or order within five days after such service, or shall continue to violate any provision or requirement of this chapter in the respect named in said notice or order, shall also be subject to a civil penalty of two hundred and fifty dollars. For the recovery of any such penalties, costs, expenses or disbursements, an action may be brought in any court of civil jurisdiction in said cities. In case the notice required by section one hundred and forty of this chapter is not filed, or in case the owner, lessee or other person having control of such tenement house does not reside within the State, or can not after diligent effort be served with process therein, the existence of a nuisance or of any violation of this chapter, or of any violation of an order or a notice made by said department, in said tenement house or on the lot on which it is situated, shall subject said tenement house and lot to a penalty of two hundred and fifty dollars. Said penalty shall be a lien upon said house and lot."

It is unnecessary to discuss the evidence herein further than to say that it overwhelmingly establishes that the premises in question were used for the purpose of notorious and flagrant prostitution, the negro prostitutes who lived in the apartments therein soliciting upon the streets and from the front stoop of the building. These conditions have existed openly and without disguise for over a year. Many arrests were made of the inmates and numerous convictions of them obtained for prostitution. The building is near a subway station, which made its ill repute all the greater because of the shamelessness with which its vile use was made evident to the crowds of people who entered and left the station. No effort was made to contradict the testimony of seven police officers as to the character of the tenants and occupants of the premises in question, the open notoriety with which prostitution was

conducted therefrom and therein, or the frequency with which the inmates were convicted of solicitation and prostitution therein. The defense consisted solely in seeking to avoid responsibility because the premises had been leased by defendant to other parties and it was not itself in possession of the property when the acts complained of occurred. The testimony as to successive leases of this property is evasive, indefinite and unsatisfactory and gives every indication of a series of apparent transfers of possession, intended really to evade responsibility for a condition of affairs which all concerned well knew and were willing to profit by, though not to answer for. So far as can be gathered from the very confused testimony for defendant, the latter leased the property in question (directly or indirectly) to the Shenk Realty and Construction Company, whereof Joseph Shenk is an officer, whose operations as an owner of disorderly premises have already been before this court for consideration. (*People* v. *Shenk*, 181 App. Div. 753.) The Shenk Company then leased the upper part of the premises, with accommodations for thirty families, to either Morris Moore or his twenty-three-year-old son Charles Moore, who has been in charge thereof for three years. This lease was not produced nor did Morris Moore, the alleged lessee, testify. One Herman Ratner is employed to collect the rents from these premises and twenty-seven others, and it is claimed he turns over the proceeds to Charles Moore. The rent roll for the premises in question amounts to $800 a month, and for all Ratner's services in collecting rent for the twenty-eight buildings he receives from Moore $14 a week and is furnished desk room in his office. The Shenk Company retains the stores in the premises in question. Moore admits he was informed of arrests in these premises and knew a policeman was stationed there. He testified that the lease to him or his father had never been recorded, and he could not tell whether it expired in May or September, or whether it had a year or a year and a half to run. He admitted he had lots of trouble right along with the property and there were many raids there, but all he ever did was to dispossess tenants for non-payment of rent if they were reported as being immoral, and in a year he claimed to have so turned out nineteen tenants. He testified that none of the

tenants lived in the premises more than two weeks. The janitor York (whose assistant or helper Young had been arrested and convicted for keeping a disorderly house in one of the apartments in said premises) claimed he investigated all the tenants before he allowed them to come into the building, and had the effrontery to claim they always conducted themselves properly and no person of bad character lived there, although he admitted on cross-examination that he knew of five arrests therefrom for prostitution. The lease (if any) from defendant to the Shenk Company was not offered in evidence.

Defendant contends that section 109 of the Tenement House Law is unconstitutional, because it attempts to declare a violation thereof a misdemeanor, without proof of guilty knowledge on the part of the owner of the real estate. But I think that the statute can be so construed and applied as to avoid any question as to its constitutionality. There is no dispute that the Legislature had power to prohibit the use of a tenement house, or any part thereof, for purposes of prostitution. Upon whom is punishment to be visited for a violation of this prohibition? It seems to me that under the first clause of section 124, the phrase " every person who shall violate or assist in the violation of any provision of this chapter " is broad enough to cover any one who actively or passively produces, brings about, or knowingly permits to exist, the condition forbidden, *e. g.*, the use of a tenement for purposes of prostitution. To warrant conviction under this part of the section, which creates a criminal liability, there must be active participation in the offense, or notice or knowledge of its commission and a failure to act to end its continuance on the part of any one who is in a position to act and terminate the forbidden use of the premises. So that not only a tenant who unlawfully used his demised premises could be convicted thereunder, but as well the owner thereof who, with notice or knowledge of the continued unlawful use of his property, took no steps to end such use. The second sentence, which does not impose criminal, but a civil, liability, upon the owner of a tenement house where any violation of the statute exists, does not require proof of actual knowledge of the conditions existing in his property upon the part of the owner, but he is liable to such a liquidated civil penalty because

of the continued presence of a nuisance upon his land, and the resultant damage to the public. Such penalty does not depend upon knowledge or even negligence, but upon the prohibited use; but such use does not mean an isolated act, but a practice or relation. (*Tenement House Department* v. *McDevitt*, 215 N. Y. 160.) While defendant would clearly have been liable for the civil penalty under this rule, I think it was also properly convicted of a misdemeanor, under the first part of the section quoted. For the trial court found that defendant had actual, personal notice of the convictions for the carrying on of prostitution in these premises, and the witness Moore testified that defendant was informed by the police department, in writing, of the arrests and forwarded the letter to him, with a demand that he remove the disorderly tenants. He amplifies this testimony by saying that defendant sent him a letter once (of which he at first said he had a copy in his pocket, but afterwards denied having it) calling his attention to the fact that the police department had notified defendant that there were some arrests made there and that they wanted him " to see that the property was maintained," that he " would not allow that kind of people to be taken in there." While this showed knowledge on defendant's part of the use to which the property was being put and the depravity of its inmates and tenants, defendant is not shown to have taken a single step to end the violations of law therein, save by the writing of this letter, which it never followed up by any investigation to see if conditions had been remedied, nor did it evince the slightest solicitude to have its property rid of its criminal tenants. Under these conditions, we believe the owner, who with notice or knowledge that his property is being used for immoral purposes, takes no steps to end such use, is a party to the violation of the law and cannot take refuge behind his alleged lessees and their sublessees, janitors and agents, to escape liability for the unlawful use to which his property is being put.

The judgment of conviction appealed from is, therefore, affirmed.

Clarke, P. J., Laughlin, Page and Shearn, JJ., concurred.

Judgment affirmed.