THE BARNARD BAKESHOPS, INC., Plaintiff, *v.* EDWIN DIRIG, Defendant.

THE BARNARD BAKESHOPS, INC., Plaintiff, *v.* ARTHUR OSTEEN, Defendant.

Supreme Court, Special Term, Broome County, April 18, 1940.

*Chernin & Gold* [*A. E. Gold* of counsel], for the plaintiff.

*Levene & Levene* [*Theodore H. Levene* of counsel], for the defendants.

DEYO, J. The plaintiff brings these actions for permanent injunctions and seeks by this motion injunctions *pendente lite* against the defendants to enforce the restrictive provisions of certain contracts entered into between the plaintiff and the defendants, respectively, and to enjoin the defendants from disclosing certain lists of customers to others.

The complaints, which are substantially identical except for names, dates and route descriptions, allege that the plaintiff has invested large sums of money in its bakery business in which it has been engaged for many years; that its products are sold at retail through the medium of advertising and personal solicitation carried on by plaintiff's employees and others with whom the plaintiff contracts, who take orders, make deliveries and collect payments, using trucks and wearing distinctive uniforms bearing the plaintiff's name. The plaintiff alleges that over a period of years

it has compiled lists of its patrons which constitute valuable trade secrets, and which lists are not available to any one outside of the plaintiff's business; that the territory which it serves is divided into definite routes which are assigned to route salesmen, including the defendants; that the defendants entered into written contracts with the plaintiff, whereby plaintiff agreed to sell its baked goods to the defendants at thirty per cent below the retail price, which baked goods the defendants agreed to sell exclusively. These contracts also provided:

" *Twelfth.* The party of the first part admits that the party of the second part has furnished and disclosed to him a list of customers or patrons commonly called a route list with certain territory concerning which territory said party of the first part hereby agrees, that in the event that this contract be terminated in any manner whatsoever he will not at any time during the period of one year immediately following such termination display, sell or attempt to sell bakery products, either as owner, partner, employee or otherwise, nor perform similar service for himself or for any person, firm or corporation engaged in a like or competing line of business within such territory or in any other territory for which the route list may be hereinafter furnished or disclosed to him."

Pursuant to these contracts the defendants were assigned definite described routes and were given lists of the plaintiff's customers; this relationship continued until March 16, 1940, when they both voluntarily terminated their association with the plaintiff. It is alleged that the defendants, in violation of their respective agreements, have been and are continuing to sell bakery products along their former routes in competition with the products of the plaintiff; that they have disclosed the lists of plaintiff's customers to each other and to other persons, and that each defendant is soliciting customers on both his former route and that of the other defendant, all to the plaintiff's irreparable damage.

The complaints are framed in equity as cases where the right to an injunction, if such right exists, depends upon the nature of the actions. (Civ. Prac. Act, § 877.) Consequently, the primary question is whether or not the complaints set up facts sufficient to warrant the final judgments sought (*Huntington* v. *Cortland Home Tel. Co.*, 62 App. Div. 517; *Goldman* v. *Corn*, 111 id. 674; *Matter of Julius Restaurant, Inc.*, v. *Lombardi*, 257 id. 370, 373), and so on the determination of this motion the *prima facie* validity of the contracts must first be decided.

Restrictions on competition which are not unreasonable are valid and enforcible (*Diamond Match Co.* v. *Roeber*, 106 N. Y. 473; *Foster* v. *White*, 248 App. Div. 451, 454; affd., 273 N. Y. 596), and

agreements of this character have frequently been before the courts, which have not hesitated when a clear case was presented, to enforce the same. (*Interstate Tea Co.* v. *Alt*, 271 N. Y. 76; *Puritan Steam Laundry Co., Inc.*, v. *Robbins*, 234 App. Div. 897.) To be sure, the situation usually arises out of an employer-employee relationship, or on the sale of a business. However, the court sees no valid reason why parties who bear the relationship to one another which existed in the instant case, cannot enter into such an agreement if they desire. Whether or not the restrictions are reasonable will depend upon the facts of the particular case. (*Clark Paper & Mfg. Co.* v. *Stenacher*, 236 N. Y. 312, 321.)

Under all of the circumstances, the restrictions in the instant case were reasonable. The plaintiff, in order to protect its business and to safeguard the good will which it had established, had a right to impose a condition such as we find here, in any agreement it might make with those who dispensed its products. The contracts are neither harsh nor unduly exacting, and the restrictions are limited both as to time and territory.

The defendants contend that there was a complete failure of consideration for the reason that the plaintiff was not obligated to sell or the defendants obligated to buy any baked goods whatsoever, and that the furnishing of customers' lists cannot be regarded as consideration for these agreements, since these lists were actually furnished the defendants sometime before the execution of the agreements, and that they were in fact already selling plaintiff's goods on the routes in question when the agreements were made. Although these are interesting questions, their determination is not essential to the problem now before us, inasmuch as other consideration, ample to support the contract, seems apparent. The facts are that the plaintiff in consideration of the agreements made by the defendants, did continue to sell them merchandise at thirty per cent below the retail cost. The plaintiff permitted the defendants to act as its representatives, to hold themselves out to the public as in some way associated with the plaintiff, to carry the plaintiff's name on their motor vehicles and to take full advantage of the plaintiff's advertising program and the good will which it had established. All of the elements necessary to the validity of a unilateral contract are present. The plaintiff has performed its part of the bargain in so far as it has been permitted to do so by the defendants. Its performance was based upon the assumption that the defendants would likewise perform. The defendants have accepted the benefits and cannot now be heard to repudiate their undertakings on the ground that they received no consideration for their covenants not to compete.

The defendants next attack the validity of the contracts on the grounds that they are incomplete, indefinite and ambiguous in material elements. The offending provision is as follows: " It is further agreed that second party shall designate in writing and outline drawing the territory in which first party may operate and sell the goods and products of the second party, and may from time to time in its discretion, modify, alter or change such territory as it sees fit."

The fact that an option is reserved to one party or the other does not *ipso facto* invalidate an agreement (1 Williston on Contracts [Rev. ed.], § 44), and because a contract may require reference to extrinsic evidence will not render it unenforcible. (1 Clark, New York Law of Contracts, § 60 *et seq.*) True, in the instant case, the plaintiff failed to designate " in writing and outline drawing " the territory to be served by the defendants. It did, however, according to the allegations of the complaint, assign to each defendant definite routes which are described in the respective complaints. It furnished lists of customers and route books. It sent out its employees to point out the territory. The defendants took over these routes, they solicited customers, they sold the plaintiff's goods. The fact that the parties acted upon these contracts and operated under them for many months, clearly indicates that they were not so indefinite and uncertain that they could not be understood. (*Mautner* v. *Eitingon*, 197 App. Div. 754.) Any lack of definiteness and certainty, any ambiguity which might have existed in the contract itself, was removed by the subsequent acts of the parties. " If, however, the side of the agreement which was originally too vague for enforcement becomes definite by entire or partial performance, the other side of the agreement * * * though originally unenforceable, becomes binding." (1 Williston on Contracts [Rev. ed.], § 49; 1 Clark, New York Law of Contracts, § 63; *Grundt* v. *Shenk*, 222 App. Div. 82, 89.)

Next, the defendants contend that they were induced to enter into this agreement through misrepresentation. No fiduciary relationship existed between the parties. The defendants were not illiterate. They executed the agreements and each retained a copy. The plaintiff's affidavits definitely and unequivocally deny the charge of misrepresentation. The court does not feel it would be justified in ignoring all of these factors on the strength of the defendants' uncorroborated allegations that they did not read the contracts and that the contents thereof were misrepresented to them. The plaintiff is entitled to the enforcement of the restrictive covenants embodied in these contracts.

A different situation is presented so far as the disclosure of the plaintiff's customers' lists is concerned. The restrictive covenants

of the contracts do not provide against such disclosure. It is true that in some cases, even in the absence of a specific contract, the courts have enjoined the disclosure of trade secrets, including customers' lists which have been imparted to employees. Where this relief has been granted, however, a confidential relationship of employer and employee has existed. The cases cited by the plaintiff take cognizance of this fact and base their reasoning on the existence of such relationship. As was said in *Witkop & Holmes Co. v. Boyce* (61 Misc. 126, 132): " We, therefore, are of the opinion that, independently of any express contract between the parties, equity will restrain the acts of which the plaintiff complains, and which the defendant threatens and claims the right to do. *This arises out of a violation of duty, having its origin in the relation of employer and employed, and an implied contract that an employee will not divulge confidential knowledge gained in the course of his employment, or use such information to his employer's prejudice.*" (Italics supplied.) The relationship of employer and employee and the elements of trust and confidence flowing therefrom are totally lacking in the case at bar. The plaintiff here had a right to insert a provision against non-disclosure in the contracts. This it did not do. The court fails to find that the confidential relationship essential to the restraint sought existed in the instant case.

An injunction *pendente lite* is granted, restraining each of the defendants from displaying, selling or attempting to sell bakery products either as owner, partner, employee or otherwise, and from performing similar services for themselves or for any other person, firm or corporation engaged in a like or competing line of business within the territory embraced in the particular route assigned to each defendant at the time they entered into their respective written agreements as the same are set forth in the complaints in each action.

Submit order and file undertakings in the amount of $1,000 in each case.