HARRY LIVINGSTON, INC.,

*vs.*

HARRY MACHER.

*New Castle, August 1, 1947.*

*E. Ennalls Berl* and *James L. Latchum,* of Southerland, Berl & Potter, for complainant.

*Morris Cohen,* of Cohen & Cohen, and *Thomas Herlihy, Jr.,* for defendant.

SEITZ, Vice-Chancellor: The issue here concerns the enforceability of a restrictive employment covenant.

The complainant, Harry Livingston, Inc., operates a chain of stores engaged in the retail credit clothing and jewelry business. It has operated such a store in Wilmington for several years. On January 29, 1945, the complainant employed the defendant Harry Macher as manager of its Wilmington store at which time the defendant entered into an employment contract with complainant. Since the case turns upon the proper application of this contract to the facts as I find them, I shall attempt either to summarize or to quote its pertinent provisions.

Under the contract, the defendant was employed to manage the Wilmington store for $95 a week. The agreement sets forth at length the authority and the various duties of the manager. It then provides as follows:

"18. It is further agreed by and between the parties hereto that the Manager is employed from week to week and this employment may be terminated at the end of any week by the Corporation and at end of any week by the Manager upon such Manager giving to the Corporation at the Home Office one week's notice of his intention to terminate said employment, in writing.

"READ CAREFULLY

"19. The Manager does hereby agree that in the event that he shall leave the employ of the Corporation or that his employment shall be terminated by the Corporation for any reason or cause whatsoever, he shall and will not for a period of two (2) years from date of his leaving the employ of the Corporation or the termination thereof by the Corporation engage directly or indirectly, either as principal, officer, employee, or otherwise, in the business of selling men's, women's

or children's clothing, wearing apparel, hosiery, shoes, millinery or any merchandise similar to that sold by the Corporation on an install-ment credit or charge basis within a radius of 25 miles from the City of Wilmington, State of Delaware.

"As and for the consideration of the agreement made by the Man-ager as set forth in this paragraph marked 19, the Corporation does hereby agree to pay to the Manager and the Manager does hereby agree to accept from the Corporation 20% of the sum paid him as drawing account and salary as full compensation each week on the regular pay day of each and every week that the Manager is in the employ of the Corporation for carrying out agreement embodied in this Para-graph No. 19.

"All the terms, covenants and conditions of this agreement under which the Manager is employed by the Corporation shall in all respects be governed and construed under and pursuant to the laws of the State of New York.

"The terms of this agreement shall not be altered, amended or modified except in writing signed by a duly authorized officer of the Corporation, and by Manager."

When the complainant opened its new store in Wil-mington in February of 1946, defendant was made manager at a salary of $125 per week. At the close of business on September 14, 1946 (a Saturday), the complainant without any notice terminated the defendant's employment as of the same date.

I find that the defendant's employment was terminated in accordance with the provisions of the contract existing between the complainant and defendant. I further find that the apparent cause for the termination of the defendant's employment was the complainant's dissatisfaction with the defendant's management of the store. It is unnecessary to decide whether this dissatisfaction was warranted in any legal sense because, under the contract, the restrictive cove-nant applied no matter what reason existed for the termin-ation of the defendant's employment.

After the complainant terminated the defendant's em-ployment, the latter sought on several occasions to procure payment of certain money due him for his last week's salary,

as well as other money due him under certain incentive plans which were in operation while the defendant was employed. This matter was finally settled.

On February 3, 1947, the defendant entered the employment of Ogden-Howard Company in its store located in Wilmington within approximately 200 yards of the complainant's store. The nature of Ogden-Howard Company's business, in so far as it covers the same ground, is substantially the same as that in which the complainant is engaged. It is conceded, to the extent mentioned, that the complainant's store and the Ogden-Howard store are competitors. The defendant is employed by Ogden-Howard Company as the manager of its retail clothing and jewelry department, and although the store uses practically the same credit system as that extant in the complainant's store, I find that the defendant has nothing to do with the extension of credit.

Very soon after discovery of the defendant's employment, the complainant filed this action seeking to enjoin the defendant "from engaging in the business of selling clothing, wearing apparel and other such merchandise, sold by complainant within a radius of twenty-five miles of Wilmington, Delaware, until September 14, 1948; and from furnishing any information concerning complainant's business or its customers or any other matter in connection therewith to any retail credit clothing business located as aforesaid, until such date."

Defendant's answer sets up numerous defenses to the bill of complaint, but the principal defense is that under the facts and the governing law complainant is not entitled to an injunction to enforce the restrictive covenant contained in Paragraph 19 of the contract.

Initially, both parties accept as binding the provision in the contract to the effect that all the covenants of the contract should be governed and construed under and pursuant to the laws of the State of New York. Pursuant to counsel's agreement, I shall make a finding of fact from

the New York cases cited or referred to in the briefs and shall consider the New York law as binding.

As is so often the case, unhappily for the court, the solicitors for the parties are in sharp disagreement as to the meaning and effect of the many New York cases cited. The best general statement I can find of the applicable New York law is found in the opinion of the Court of Appeals in *Clark Paper & Mfg. Co. v. Stenacher,* 236 *N.Y.* 312, 140 *N.E.* 708, 711, 29 *A.L.R.* 1325. While the case is not of precise application in so far as the facts are concerned, nevertheless, the following statement of principles is to my mind of governing force in this case:

"* * * An express negative covenant not to work for another will not, as a rule, be granted save in those exceptional cases where, by reason of the peculiar or extraordinary character of the services, a violation of an agreement will cause injury to the employer for which an action at law will afford no adequate remedy. An injunction may always issue to enforce such a covenant where the employee has become the possessor of valuable trade secrets concrning his employer's business. *Gossard Co. v. Crosby, supra* [132 *Iowa* 155, 109 *N. W.* 483, 6 *L. R. A. (N. S.)* 1115].

* * * * * *

"In the cases where a court has enforced a negative covenant by an employee not to work for another for a long period of time and about the nature of whose work there is nothing special or peculiarly valuable, the element of trade secrets or unfair dealing has been controlling and important. *Magnolia Metal Co. v. Price,* 65 *App. Div.* 276, 72 *N. Y. S.* 792. Each case must depend upon its own facts and circumstances. Any unfair competition or practice may move equity to enforce a negative covenant."

The above quoted language appears to be the last substantial expression of the law on this point by the highest court of New York. The court recognized and accepted the same principles as were enunciated in some of the earlier Court of Appeals cases. See *Kaumagraph Co. v. Stampagraph Co.,* 235 *N.Y.* 1, 138 *N.E.* 485; *McCall Co. v. Wright,* 198 *N.Y.* 143, 91 *N.E.* 516, 31 *L.R.A.(N.S.)* 1249. The many lower court opinions since the decision in the *Stenacher* case reflect an adherence to and application of the

same principles of law. See, e. g., *Molina, et al., v. Barany, Sup.*, 56 *N.Y.S.* 2d 124; *Murray v. Cooper*, 268 *App. Div.* 411, 51 *N.Y.S.* 2d 935, affirmed 294 *N.Y.* 658, 60 *N.E.* 2d 387; *Barnard Bakeshops, Inc., v. Dirig*, 173 *Misc.* 862, 19 *N.Y.S.* 2d 224.

Reverting again to the *Stenacher* case, we see that in New York an express negative covenant not to work for another will not be enforced unless by reason of the peculiar or extraordinary character of the services a violation of the agreement will cause such injury to the employer that an action at law will not afford an adequate remedy, or unless its enforcement is required to protect trade secrets or to prevent unfair competition. We look to the facts here to see whether complainant has brought its case within any of the categories mentioned, keeping in mind that we do not have a restrictive covenant made in connection with the sale of a business. See *Goldstein v. Maisel*, 271 *App. Div.* 971, 67 *N.Y.S.* 2d 410.

First, let us consider the character of the services rendered by the defendant as manager of the complainant's store. In order to understand the defendant's duties as manager, it is necessary to describe the complainant's business. Complainant is engaged in the retail clothing and jewelry business on a credit basis. The success of complainant's business depends upon selling on credit in a substantial volume. Consequently, a great many people come into the store each day to make installment payments or to make purchases on credit. The store employs several salespeople as well as a small office force. The duties of the manager as described by the present manager of the store are "to supervise the personnel, supervise the selling floor, pass on credits and collect, dunning cards, trim windows—."

The testimony falls far short of indicating anything so peculiar or extraordinary in the character of the defendant's services as to require injunctive relief. See *Clark*

*Paper & Mfg. Co. v. Stenacher, supra.* This same conclusion was reached by the Minnesota court in a comparable situation in the case of *Menter Co. v. Brock, et al.*, 147 *Minn.* 407, 180 *N.W.* 553, 20 *A.L.R.* 857, where the court gave elaborate consideration to the New York authorities. The lack of anything peculiar or extraordinary about the character of the defendant's services is supported to a degree by the testimony which shows that the defendant was replaced immediately. Compare *W. J. Johnston Co., Limited, v. Hunt, et al.*, 66 *Hun* 504, 21 *N.Y.S.* 314, affirmed on opinion below 142 *N.Y.* 621, 37 *N.E.* 564.

Did the defendant acquire any "trade secrets" from the complainant which should be protected by the enforcement of the restrictive covenant? Complainant does not suggest that there is anything secret about the business methods employed by it. Complainant does suggest, however, that the defendant acquired knowledge as to the identity of the complainant's customers and implies that the defendant could with the aid of a city directory and telephone directory compile a substantial list of the complainant's customers which he could give to his present employer —the complainant's competitor.

Preliminarily, I conclude from the evidence that the defendant did not obtain any personal hold over the customers of the store which he could use to the substantial disadvantage of the complainant. Compare *Menter Co. v. Brock, et al., supra.* The sales were largely handled by persons other than the manager, and he was called upon only when a sale could not be made. The installment payments were not necessarily paid to the defendant. Thus, there was no procedure whereby the defendant necessarily came in contact with all the customers, and when he did contact them, there is nothing to indicate that it was anything more than casual. The testimony demonstrates quite clearly that the primary concern was with customer volume. While complainant introduced testimony which, if accepted, would indicate that a manager comes to acquire real know-

ledge about the identity of a great many customers, I believe the testimony was dictated more by enthusiastic self-interest rather than warranted by the realities of mass retail install-ment buying. Thus, for the manager to take an installment credit book in which the customer's name appears and call him by name does not constitute that type of knowledge of the customer which can be used adversely to the com-plainant's interests by one no longer a member of the organ-ization.

I conclude that the defendant is not possessed of such a knowledge of or "hold" over complainant's customers as would warrant the enforcement of the restrictive covenant to protect the complainant. I reach this result by assuming, rather than deciding, that actual knowledge by defendant of the names and addresses of a substantial number of complainant's customers would call for the invocation of the restrictive covenant under the New York law.

We look finally to see whether there is any element of unfair competition involved in defendant's conduct. Com-plainant suggests that defendant could have purloined a set of "addressing labels" containing the names and ad-dresses of complainant's customers. It further suggests that the defendant has solicited complainant's customers for his new employer. I shall assume that the taking of such a list of customers would constitute unfair competition entitling complainant to enforcement of the negative cove-nant.

The proof completely fails to sustain the implication inherent in the complainant's suggestion that because the defendant could have taken a set of addressing labels, that he, therefore, actually took such a set. On the contrary, a reasonable inference from the evidence is that he did not take such a set. The uncontroverted testimony shows that the defendant was totally unaware that his services were to be terminated until he was so notified when he was ready to leave the store on Saturday evening. He left the store at that time and so had no opportunity to take a

set of labels after being notified of the termination of his employment. There is nothing to show that such a set was taken by defendant prior to the receipt of the notice of termination.

The testimony also fails to show any unfair solicitation of the complainant's customers by the defendant. The most that can be read into the testimony is that one or two people who dealt at some time or other with complainant recognized the defendant when they came into the store where the defendant now works. The testimony indicates that these persons were also customers of the defendant's present employer, and had not come into the store on defendant's solicitation. I conclude that the complainant has not shown any such solicitation of its customers by the defendant or by others through information provided by him as would constitute unfair competition.

The facts as I find them, including the New York law, indicate that the complainant is not now in a position to have enforced by way of injunction the restrictive covenant contained in paragraph 19 of the contract. Moreover, on the basis of the benefit-burden test approved by the New York court in the *Stenacher* case, the defendant must prevail because under the facts here the burden upon the defendant inherent in enforcing the restrictive covenant far outweighs any benefit which the complainant would receive thereby. In fact, the tendency of such a provision as is here involved when coupled with the right to terminate without any notice or on short notice is to discourage the employee from leaving such an employer's services and yet leave the employer without any obligation. Such a form of "economic servitude" is hardly entitled to recognition and enforcement in a court of equity under the present facts. See *Clark Paper & Mfg. Co. v. Stenacher, supra.* There may well be cases where an employer is entitled to such protection, but this is not such a case.

The many New York cases relied upon by complainant where such a covenant was enforced involve trade secrets,

the possession or use of customer lists, or contain some element of unfair competition. I have found these elements to be absent here. In view of my conclusion, it is unnecessary to pass upon the other defenses asserted by the defendant.

A decree accordingly will be advised.