THE MOST WORSHIPFUL PRINCE HALL GRAND LODGE OF FREE AND ACCEPTED MASONS OF THE STATE OF DELAWARE, INCORPORATED, a corporation of the State of Delaware,

*vs.*

HIRAM GRAND LODGE MASONIC TEMPLE, INC., a corporation of the State of Delaware, and WILLIAM H. SMITH, THOMAS BLACKWELL, CHARLES JOHNSON, ISRAEL MARSHALL, GEORGE QUARLES, EARL R. TAYLOR, ALBERT TUNKINS, MATTHEW W. REESE, JOSEPH SIMS, and OLIVER UNDERHILL.

*New Castle, April 19, 1951.*

*Louis L. Redding,* Wilmington, for plaintiff.

*H. Albert Young,* and *Stephen E. Hamilton, Jr.,* of Young and Wood, Wilmington, for defendants.

SEITZ, Vice Chancellor: Plaintiff seeks a review of an election of directors by the stockholders of the defendant corporation.

Plaintiff, as the holder of a majority of the defendant corporation's common stock, sought and was refused the right to vote its stock at the meeting here reviewed. Defendants refused on the ground that plaintiff was not entitled to vote such stock under the terms of the following agreement executed by the plaintiff and the defendant corporation in December, 1925:

"Whereas, It is of prime importance that the Trustees of Hiram Grand Lodge Masonic Temple Incorporated [defendant corporation] should safeguard the interests of her Stockholders, and

"Whereas, Since the possessions of The Most Worshipful Hiram Grand Lodge [plaintiff] are the possessions of all Masons who have paid taxes and assessments through the years of her existence, the Trustees of Hiram Grand Lodge Masonic Temple Incorporated see grave danger to the interests of the Stockholders in the purchase of common stock by the Most Worshipful Hiram Grand Lodge for her

money invested. The trustees cannot overlook the possibility of the Grand Lodge voting the Stock of the Craft against the Stockholder; therefore, be it

"Resolved, That the Most Worshipful Hiram Grand Lodge [plaintiff] receive common stock for all of her money invested now, or in the future; and, the same to be void of voting power, but held in trust as the property of the Craft. In cases of misgovernment of the Trustees, or anything that would work harm to the corporation, or to the Grand Lodge, such stock held in trust by the Most Worshipful Hiram Grand Lodge, shall be released for voting purposes."

In December, 1925 plaintiff paid the defendant corporation the full par value price of the common shares issued to it and received a certificate therefor. At or about the same time the parties executed the quoted agreement.

Defendants defend their action in refusing to permit plaintiff to vote its stock on the ground that the quoted agreement is valid and binding and no grounds for permitting the stock to vote existed. Plaintiff asserts that the agreement is invalid for several reasons.

Plaintiff first contends that the alleged agreement is not a legally binding obligation because of its uncertainty and indefiniteness. Defendants argue that it is reasonably definite.

It is well settled that an agreement in order to be a legally binding agreement must be reasonably definite and certain in its terms. *Truitt v. Fahey,* 3 *Penniwill* 573, 52 *A.* 339. The question then is whether the language of the agreement that the stock was not to be voted except "in cases of misgovernment * * * or anything that would work harm" to the plaintiff or the corporate defendant is sufficiently definite.

I pass over the question as to whether or not the phrase "cases of misgovernment" is reasonably definite. Is the language "or anything that would work harm" to the plaintiff or to the defendant corporation reasonably definite? I think not. Nowhere in the agreement is there

any standard by which the quoted language can be rendered more definite. In this respect, among others, it is distinguishable from the agreement in *Ringling v. Ringling Bros.*, 29 *Del. Ch.* 318, 49 *A.* 2d 603, affirmed with modification, 29 *Del. Ch.* 610, 53 *A.* 2d 441. Is the standard to be subjective or objective? Certainly stockholders can have innumerable diverse yet honest opinions as to whether a particular action is or is not working harm to their interest. So many factors could constitute the basis for a decision by a stockholder that certain corporate action was doing harm that no court could fairly substitute its judgment for that reached by plaintiff-stockholder. Defendants tacitly concede that the initial decision is for plaintiff alone but they contend that it may not be capricious or arbitrary. Under the language here employed the judgment is for plaintiff to make. What might be a capricious judgment to the court might be sound to plaintiff.

This possibility only goes to point up the indefiniteness of the language.

Indeed, even if the agreement were to be upheld, it might reasonably be argued that by voting its stock plaintiff was evidencing that something was in its opinion working harm to plaintiff's interest. Suppose plaintiff were to say that the mere continuance of the present management, without more, was working harm. Could the court overrule that decision? I think not under the language here employed and in view of the intangible factors involved.

Since this vital provision in the agreement is not reasonably definite and certain in the sense that the plaintiff's decision is susceptible of objective evaluation, it follows that the agreement must be and hereby is declared invalid.

[3] Defendants' counsel argue that even if the agreement is invalid, nevertheless, plaintiff is barred from any right to vote its stock by laches, acquiescence and unclean hands. Defendants rely on the plaintiff's long course of conduct in treating the 1925 agreement as valid. Let it

be conceded that plaintiff did not act to attack the validity of the agreement for many years. It may well be that laches and acquiescence would bar plaintiffs from questioning the validity of past elections and actions premised thereon. However, plaintiff's right to vote is a continuing one —the agreement being invalid—and as to the election under review, I do not believe plaintiff can be held guilty of laches or acquiescence. Defendants and other stockholders had no guarantee, even if the agreement were to be held valid, that the plaintiff would not have voted its stock at every election in view of the unrestricted language of the agreement.

I conclude that plaintiff was not barred by laches and acquiescence from voting its stock at the election under review.

■ Did plaintiff's repudiation of the 1925 agreement render plaintiff guilty of unclean hands here? I conclude not. Defendants rely strongly on *Electrical Research Products v. Vitaphone Corp.*, 20 *Del. Ch.* 417, 171 *A*. 738. That case involved conduct of a substantially different character. As heretofore indicated, plaintiff is not here attacking the validity of action taken under the agreement at a time when its validity was not under attack. The attack upon the validity of the agreement itself does not put plaintiff out of court in this type of case. I find no unclean hands here.

■ The sole ground upon which defendants refused to permit plaintiff to vote its stock was on the basis of the agreement in question. Since that agreement was invalid for the reason stated, it follows that the election here reviewed must be set aside and a new election held.

Order on notice.