Norvin G. MALONEY, Jr., Appellant,

v.

E. I. DU PONT de NEMOURS & CO., Inc., Appellee.

Nos. 18454, 18874.

United States Court of Appeals District of Columbia Circuit.

Argued March 15, 1965.

Decided June 10, 1965.

Appellant's Motion for Rehearing Denied Oct. 5, 1965.

Appellee's Petition for Rehearing En Banc and/or for Rehearing by the Division in 18454 Denied Oct. 5, 1965.

or confidential information he might learn during the course of his employment. The only term in the contract form which dealt with other conditions of employment stated that he would be employed "at a wage or salary and for such length of time as shall be mutually agreeable." Appellant was dismissed from the employment of Du Pont in January 1961, by a letter which informed him only that the Company no longer had need for his services, and that he would be given one month's pay in lieu of notice.

Appellant brought two actions against Du Pont in the United States District Court for the District of Columbia challenging this dismissal, one grounded in contract and the other in fraud. He claims, in the first, that he was entitled to "permanent" employment, terminable only by mutual consent, retirement, or for cause, and that none of these conditions for termination was satisfied. In the second, he argued that he was fraudulently induced to leave former employment and accept employment with Du Pont by the promise that his employment would be permanent. In both actions, the trial court found for appellee Du Pont on its motions for summary judgment. These appeals followed.

■ The action for fraud (our No. 18,-874) was brought January 13, 1964. This was exactly three years after appellant had received formal notice that Du Pont no longer wished his services. However, it is uncontroverted that appellant was given oral notice of Du Pont's belief that it had the right to fire him under the contract, and intended to exercise that right, in November and December 1960. Since a three-year statute of limitations applies, and appellant must have discovered the putative fraud in 1960 at the very latest, it appears that the suit was barred. Wiren v. Paramount Pictures, Inc., 92 U.S.App.D.C. 347, 206 F.2d 465 (1953), cert. denied, 346 U.S. 938, 74 S.Ct. 378, 98 L.Ed. 426 (1954). We thus affirm the judgment below in No. 18,874.

Mr. Henry Lincoln Johnson, Jr., Washington, D. C., for appellant.

Mr. James C. McKay, Washington, D. C., with whom Mr. Edward J. Grenier, Jr., Washington, D. C., was on the brief, for appellee.

Before BAZELON, Chief Judge, and WASHINGTON and WRIGHT, Circuit Judges.

WASHINGTON, Circuit Judge.

Appellant, a development engineer, was employed by appellee E. I. Du Pont de Nemours & Co., in 1945. Then, and again in 1952, he executed a form contract assigning all discoveries he might make during the term of his employment to Du Pont, and promising never to reveal without permission any secret

938

In the contract action (our No. 18454), the trial judge rested his grant of summary judgment upon interpretation of the contract form. He found that it embodied appellant's contract of employment, and that its terms unambiguously created a relationship terminable at the will of either party.[1] If his findings were correct, termination by Du Pont could not have given rise to any cause of action. Their correctness, however, must be decided by reference to Delaware contract law, for all parties are domiciled there and it was there that the contract form was signed and all work performed. So viewing the findings, we find them erroneous, because there remain unresolved issues of material fact, requiring trial and foreclosing summary judgment.[2]

The question first arises whether the form constituted a contract at all. Wages and duration of employment, it provides in essence, are to be mutually agreed upon. In Hammond & Taylor, Inc., v. Duffy Tingue Co., 39 Del.Ch. 174, 161 A.2d 238 (1960), the Delaware Chancery Court characterized a contract providing for employment "on terms to be mutually agreed on" as "almost the classic example of a legally unenforceable * * * agreement to agree." It stated that evidence of oral agreements could be consulted to see if a definite and enforceable compact existed, and, on the facts, found no such agreement to exist. Although the contract in *Hammond & Taylor* was executory, and the parties here had been "performing" for upwards of fifteen years, we think no different conclusion would be reached.[3] In the absence of an oral agreement, there would appear to be no valid contract.[4]

As we read appellant's complaint and affidavit upon appellee's motion for summary judgment, however, a substantial question of fact is presented whether a supplementary oral agreement was made. He claims that oral representations were made to him that Du Pont would continue his employment, so long as he satisfactorily performed the work assigned to him, if economic conditions permitted. Thus, he could not be discharged except for cause, in cases of economic necessity, or at retirement.

1. In an earlier proceeding, on Du Pont's motion to dismiss the complaint for failure to state a cause of action, another district judge had indicated a contrary point of view. Appellant claims the present ruling was a violation of "law of the case." We need not reach this contention.

2. Since Delaware law was argued neither to the trial court nor to this court, we do not attempt precision in identifying these issues. It is sufficient to satisfy ourselves that a cause of action might exist under Delaware law, depending on the facts proved, leaving further definition to the adversary process on remand and in any future appeal.

3. Most Worshipful P.H.G. Lodge of Free and Accepted Masons of Delaware v. Hiram Grand Lodge Masonic Temple, 32 Del.Ch. 85, 80 A.2d 294 (1951) (agreement surrendering right to vote stock, with revival of right contingent upon stated conditions, held fatally indefinite although voting right not claimed for twenty-six years under the agreement).

4. This conclusion apparently would extend to the provisions of the instrument imposing a continuing duty of secrecy, leaving Du Pont to a common-law remedy for any actual or threatened breach of secrecy by appellant. See M. F. v. F., 172 A.2d 274 (Del.Ch. 1961). The degree of common-law protection is quite possibly less than might be obtained by contract. *Compare* Wexler v. Greenberg, 399 Pa. 569, 160 A.2d 430 (1960), *with* Original Vincent & Joseph, Inc. v. Schiavone, 36 Del.Ch. 548, 134 A.2d 843 (1957).

On the other hand, it would not impair the validity of the patent assignments made while appellant was a Du Pont employee. An employer would be entitled to work product with or without contractual provisions to that effect. United States v. Dubilier Condenser Corp., 289 U.S. 178, 53 S.Ct. 554, 77 L.Ed. 1114 (1933). *Compare* Most Worshipful P.H.G. Lodge, *supra*, where the court seemed to concede that corporate actions undertaken during the period when the vote was not being exercised were not subject to challenge.

Although such contracts ordinarily are not favored in the law,[5] we conclude that Delaware courts would enforce such an agreement, were it shown, in view of the conditions of secrecy placed upon appellant. Delaware courts have frequently been solicitous of the employee who has agreed to provisions restricting his right to compete with a former employer, or to use knowledge and skills he may have acquired.[6] This solicitude is, in effect, an acknowledgement that an employee thus assumes what may be a substantial burden of diminished employment mobility.[7] Even where limited to "trade secrets," such provisions can have a chilling effect on negotiations with a prospective employer, who will wish to avoid even the threat of litigation.[8] In Delaware, secrecy clauses are apparently enforceable by injunction, whether or not bad faith on the part of the employee is shown.[9] It seems to follow that Delaware courts would consider such provisions special consideration for a "tenure" contract.[10]

We note, moreover, that, in view of the present record, appellant's claim to a "tenure" contract is not extravagant. Printed forms explaining employee benefits for Du Pont employees, in the record of No. 18,874, state that the continuity of an employee's service is broken by a variety of causes. Discharge for cause, layoffs of a certain length, and other forms of termination are specified; no mention is made that discharge may be at Du Pont's whim, or what the consequences of such a discharge might be. By various policies and acts, it appears that Du Pont encourages its employees to think in terms of a permanent place at Du Pont. Moreover, the contract contains no mention of a right of either party to terminate at will; nor does the contract provide for any notice of termination, separation pay, or other amenities which might be expected to follow employment subject to arbitrary termination. Other industry contracts imposing a duty of secrecy often specify periods of notice which must be given on termination, and explictly reserve the com-

---

5. Lee v. Jenkins Brothers, 268 F.2d 357, 368–370 (2d Cir. 1959); Littell v. Evening Star Newspaper Co., 73 U.S.App.D.C. 409, 120 F.2d 36 (1941).

6. Original Vincent & Joseph, Inc. v. Schiavone, note 4, *supra;* Livingston, Inc. v. Macher, 30 Del.Ch. 94, 54 A.2d 169 (1947); *compare* E. I. du Pont de Nemours & Co. v. American Potash & Chemical Corp., 200 A.2d 428 (Del.Ch. 1964) ("Among the substantial and conflicting policies at play * * * are the protection of employers' rights in their trade secrets * * * versus the right of the individual to exploit his talents. * * * What accommodation, if any, is to be made must await the decision after trial") *with* Wexler v. Greenberg, 399 Pa. 569, 160 A.2d 430, 435 (1959) ("Were we to measure the sentiment of the law by the weight of both English and American decisions in order to determine whether it favors protecting a businessman from certain forms of competition or protecting an individual in his unrestricted pursuit of a livelihood, the balance would heavily favor the latter.") See Blake, *Employee Agreements Not to Compete,* 73 HARV.L.REV. 624, 627, 647–50, 684–85 (1960).

7. *Trade Secrets: The Technical Man in Legal Land,* CHEMICAL & ENGINEERING NEWS 81, Jan. 18, 1965; see Hudson Foam Latex Products, Inc. v. Aiken, 82 N.J.Super. 508, 198 A.2d 136 (1964). The effect can be expected to be the greater where, as in appellant's case, an employee has worked with one company for so long that the line between his personal skill and his employer's protectable know-how becomes indistinct. TURNER, THE LAW OF TRADE SECRETS 120–28, 160–63, 168 (1962).

8. Appellant claims such an effect in his case, caused by DuPont's apparent interest in enforcing its agreements strictly. E. I. duPont de Nemours & Co. v. American Potash & Chemical Corp., note 6 *supra.*

9. *Ibid.* The possibility of bad faith seems to be the principal source of the restrictions, however, and may be a *sine qua non* for injunctive relief in the absence of contract. Comment, *Industrial Secrets and the Skilled Employee,* 38 N.Y. U.L.REV. 324, 324–334 (1963).

10. Note 5 *supra.*

pany's right to terminate unilaterally in accord with those provisions.[11] Since in Delaware, as elsewhere, the terms of a contract are to be construed against the party drawing it [12]—here Du Pont—there is some reason to believe a Delaware court would conclude that discharge without cause or other justification was wrongful.[13]

If it is concluded that a case for wrongful breach can be made out, the question of remedy arises.[14] Appellant sued on three counts. Plainly, appellant would be entitled to show consequential damages, as he claims in the third count of his complaint. But in addition to damages, appellant sought to reclaim his patents and inventions, and to have an accounting of Du Pont's profits from their use. However, an assignment of an invention made during a period of actual employment for the express purpose of inventing could be compelled, even in the absence of express contractual provision.[15] Certainly, an assignment already made would not be undone. We hold, therefore, that summary judgment was properly granted as to counts one and two of the complaint.

In reversing, we hold only that summary judgment was erroneously granted on count three of the complaint, alleging wrongful breach by Du Pont of the employment relationship. We find the issue to be, under Delaware law,[16] whether the contract provision is too indefinite to stand or, on the contrary, is defined by supplementary oral representations and agreements made at the time of contracting. If such supplementary agreements exist, the question arises whether they support Du Pont's view of the contract or appellant's. If they support appellant's view, the question will be whether the discharge was wrongful—i. e., not for

11. *E.g.*, the form used by the American Cyanamid Co., reproduced in I Washington & Rothschild, Compensating The Corporate Executive 318 (1962), provides:

"(1) Employment. The Employee shall be and hereby is employed by the Company, and the Employee shall faithfully and to the best of his ability perform services for the Company as directed by it, devoting all of his working time to such services. Such employment shall continue until the Employee's retirement date under any applicable retirement plan, subject to the right of either the Employee or the Company to terminate the employment on one day's notice if given during the first six months of continuous employment, or on .......... notice if given thereafter; and subject to the right of the Company to terminate the employment at any time in the event of default or non-performance by the Employee of any of the provisions of this Agreement. In the event of notice, the Employee shall remain for the full notice period if so requested by the Company, but the Company reserves the right at any time to pay the Employee his full salary for any required notice period and to terminate the employment immediately or at any time during such period."

12. Philadelphia Storage Battery Co. v. Radio Corporation of America, 22 Del. Ch. 211, 194 A. 414 (1937), affirmed, 6 A.2d 329 (Sup.Ct.Del.1938).

13. Compare Patent & Licensing Corp. v. Olsen, 188 F.2d 522 (2d Cir. 1951, per A. Hand, J.), where the court upheld an agreement to assign patents, but went out of its way to find protection on discharge for the employee involved.

14. Commentators have suggested that wrongful breach by the employer might waive any right he might have to injunctive relief against breaches of secrecy. 5A Corbin, Contracts § 1210, pp. 424–425 (1964); 6A *id.* § 1394, pp. 103–04 (1962); Blake, note 6 *supra* at 685.

15. Note 4 *supra*.

16. Perhaps this case could more properly have been brought in the Delaware courts. However, since the plaintiff's choice of the forum is not to be altogether disregarded and since the questions presented can be resolved in the courts of this jurisdiction without impropriety, we will decide this appeal. However, we remind the District Court once again of the possibility of its raising on its own motion the question whether the interests of justice might be better served by transfer to another forum. *Cf.* Caspar v. Devine, 103 U.S. App.D.C. 193, 257 F. 2d 197 (1958). See 1A Moore, Federal Practice ¶ 0.204 (1959).

cause or other justified reason; if wrongful, damages must still be shown. Of course, we intimate no view as to any of these questions.

No. 18874 is affirmed.

No. 18454 is affirmed in part and reversed and remanded in part.