KAUMAGRAPH COMPANY, Appellant, *v.* STAMPAGRAPH Co., INC., et al., Respondents, Impleaded with Others.

Equity — injunction — trade secrets — injunction will not be granted to restrain employee from using in another employment processes and formulas of plaintiff's business where such processes were known and used by the employees before plaintiff used them — illegal restrictive covenants of employment — costs — additional allowance in Appellate Division.

1. Employees may be bound by express or implied contract not to disclose trade secrets and courts of equity will restrain a party from making a disclosure of secrets communicated to him through and by means of his having been in a confidential employment where plaintiff was employing in his business a secret process communicated by him to the employee. Employees may not gain knowledge of a secret and avail themselves of it for their private advantage against their employer; but there is no betrayal of confidence when there is no secret.

2. A secret is a private matter, known only to one or a few and kept from others. As bearing on the question of equitable relief, it may be protected, even though acquired by discovery, independent of the original possessor or his grantees, or by unfair means. But knowledge obtained by workmen from English patents open to all and from employment by English competitors, is not possession of a trade secret that equity will protect at the suit of an American employer who has set up a rival establishment. The surrender for an unlimited time of the right to use the skill, knowledge and experience which a workman brings to the service of his employer will not be enforced in equity.

3. Contracts of employment by which, in consideration of his employment, an employee agrees that he will not engage in any similar business or disclose the secrets of the process of his employer's business, such contracts being unlimited as to time, are valid as a basis for equitable relief, only, as they protect trade secrets acquired during a confidential employment. They merely express the implied contract of one who enters into such an employment not to carry elsewhere into competition with his employer confidential knowledge obtained from him. Such contracts are valuable to protect trade secrets, but, apart from that purpose, they are unavailing to stifle competition, and equity will not enforce such contracts except to protect plaintiff's trade secrets. An employee will not be perpetually restrained from working for another except to prevent a breach of confidence as well as a breach of contract.

4. In an action brought by plaintiff to restrain the disclosure and use of certain alleged trade secrets by the defendants, who were former employees of plaintiff under contracts that they would not engage in any similar business or disclose the secrets of the process or the business, the evidence shows, and the Appellate Division has found, that the process used by plaintiff had been invented, patented and used in England many years before, and that defendants had knowledge of the patents and used in the plaintiff's business the knowledge which they had brought with them from England. Under the circumstances it was error for the trial court to grant the relief prayed.

5. When the Appellate Division upon an appeal from a judgment made new findings of fact and made a new and complete adjudication, it has power to grant an additional allowance to appellant. (General Rules of Practice, rule 45; Rules of Civil Practice, rule 200.)

*Kaumagraph Co.* v. *Stampagraph Co., Inc.,* 197 App. Div. 66, affirmed.

(Argued December 11, 1922; decided January 23, 1923.)

APPEAL from a judgment, entered August 9, 1921, upon an order of the Appellate Division of the Supreme Court in the first judicial department, reversing a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term and granting a new trial.

*Frederick Collin* and *J. Ard Haughwont* for appellant. As to confidential employees, the plaintiff was entitled to an injunction without showing either that it was the inventor of the process or that it had acquired the sole

and exclusive right to use it from the inventor. (*Vulcan Detinning Co.* v. *American Car Co.*, 67 N. J. Eq. 243; 72 N. J. Eq. 387; *Eastman Kodak Co.* v. *Reichenbach*, 79 Hun, 183; *Nat. Gum & Mica Co.* v. *Braendly*, 27 App. Div. 219; *Little* v. *Gallus*, 4 App. Div. 569; *Todd Protectograph Co.* v. *Hirschberg*, 100 Misc. Rep. 418.) The process is secret and the finding by the Appellate Division that it is not is without any evidence to support it. (*Middleton* v. *Whitridge*, 233 N. Y. 499; *Matter of Case*, 214 N. Y. 199.) The George Chadwick and Arthur Turner contracts are valid and enforcible and are sufficient to sustain the injunction as to these two defendants. (*Todd Protectograph Co.* v. *Hirschberg*, 100 Misc. Rep. 418; *Wiggins Sons Co.* v. *Cott-a-lap Co.*, 168 Fed. Rep. 150; *Diamond Match Co.* v. *Roeber*, 106 N. Y. 473; *Carter* v. *Alling*, 43 Fed. Rep. 208; *McCall* v. *Wright*, 198 N. Y. 143; *Mutual M. & C. Co.* v. *Heldt*, 120 App. Div. 797.) The Appellate Division had no power to grant the defendants an extra allowance. (*Wiley* v. *L. I. R. R. Co.*, 88 Hun, 177; *Wilbur* v. *Williams*, 4 App. Div. 444; *Sackett* v. *Ball*, 4 How. Pr. 71; *Van Rensselaer* v. *Kidd*, 5 How. Pr. 242; *Osborne* v. *Betts*, 8 How. Pr. 431; *Moskowitz* v. *Hornberger*, 20 Misc. Rep. 558; *Wolfe* v. *Van Nostrand*, 2 N. Y. 270; *Lottimer* v. *Livermore*, 6 Daly, 501; *Riverside Bank* v. *Jones*, 75 App. Div. 531.)

*Alexander S. Andrews* and *Edward J. Martin* for respondents. The true meaning of the George Chadwick and Arthur Turner negative covenants is that they should obtain during the respective fixed terms of employment plus extensions, and no longer. Otherwise they were unreasonably in restraint of trade and void. (*Tolman* v. *Mulcahy*, 119 App. Div. 42; *Oppenheimer* v. *Hirsch*, 5 App. Div. 233; *Wiggins Sons Co.* v. *Cott-a-lap Co.*, 169 Fed. Rep. 150; *Bingham* v. *Maigne*, 20 J. & S. 90.) In so far as this suit affected other ex-employees of plaintiff, it was wholly without foundation; for they never agreed

not to work for any one else, and were not using any confidential information and had none. (*Peerless, etc., Co.* v. *Pictorial, etc., Co.*, 147 App. Div. 715; *Boosing* v. *Dorman*, 148 App. Div. 824; 210 N. Y. 529; *Scott* v. *Scott*, 186 App. Div. 518; *Taylor I. & S. Co.* v. *Nichols*, 69 Atl. Rep. 186.) The Appellate Division's extra allowance of $2,000 was proper. (*Venner* v. *N. Y. C. R. R. Co.*, 177 App. Div. 296; Code Civ. Pro. § 1317; *Waterman* v. *Rigby*, 188 App. Div. 929; *Matter of Leland*, 219 N. Y. 387; *Waddle* v. *Cabana*, 220 N. Y. 18; *Lamport* v. *Smedley*, 213 N. Y. 82; *Herrman* v. *U. S. Trust Co.*, 221 N. Y. 143.)

POUND, J. This action is brought to restrain the disclosure and use of certain alleged trade secrets by the defendants. Plaintiff uses a process for making transfer stamps and embroidery patterns which it manufactures and sells. Transfer stamps are used to mark textile fabrics, leathers and other articles with an identifying design. Embroidery patterns are used to outline designs on linen and other goods. " These stamps and patterns consist of pieces of thin tissue paper upon which is deposited by means of machinery a composition forming the outline of the design. The composition is of such a character that when the paper is placed face down on a piece of fabric, leather or other material, and a hot iron is run over the back of the paper the composition is instantaneously released from the paper and adheres to the material to be marked producing a design in gold, silver or colors." The name " Kaumagraph " means " heat printing." Other kinds of transfer stamps for marking goods are known to the trade, but it is claimed for plaintiff's method that it has an advantage over them for simplicity and adaptability.

Plaintiff's method of producing transfer designs was in substance known and used in England for many years before plaintiff organized its business. John Briggs

patented the process in England in 1874 and Joseph Scott patented an improvement thereon in 1894. Briggs claimed as his invention merely " printing the said patterns with any bituminous substance or varnish of any color on the pattern paper and transferring them to fabrics to be ornamented or embroidered by the application of heat." Scott's patent covered the use of " solid metal dust or bronze powder for the ordinary paint or color hitherto employed which I mix in the usual way with the wax and resin. I prefer to mix one part of beeswax with five parts of resin and to add to half a pint of this mixture three ounces of gold or metal dust or other powder." These patents were the basis of all of plaintiff's work, experiments and improvements. Knowledge of them was obtained by plaintiff's predecessors, individuals who afterwards organized the plaintiff corporation through two individuals, George Chadwick and William Scott, who were in the employ of William Briggs & Co., Limited, of Manchester, England, which was the principal concern engaged in the business of making stamps by this transfer process. Neither Chadwick nor Scott was owner or licensee of any patents or secret formulas. They came to the United States bringing with them the knowledge they had obtained while working for the English company. Scott became and remained for a time the associate of the new organization. Chadwick made a contract of employment dated May 2, 1904, with the unincorporated Kaumagraph Company, which was plaintiff's predecessor, as an expert workman in the production of transfer stamps by the process, whereby in consideration of such employment and $7,500 stock in the company to be formed he agreed " that under no circumstances nor at any time " would he engage in any similar business or disclose the secrets of the process or the business. By a second contract dated February 1, 1909, he further agreed that he would not at any time engage in any similar business within the territory of the

United States east of the Mississippi river or in the Dominion of Canada, without first securing the written consent of plaintiff. Chadwick was superintendent of plaintiff's factory and one of the joint owners of the business before incorporation and a stockholder thereafter.

Arthur Turner was employed under a similar contract in 1907. He was Chadwick's brother-in-law and was also a former employee of the Briggs company in England.

These contracts are unlimited as to time and are valid as a basis for equitable relief only as they protect trade secrets acquired during a confidential employment. They merely express the implied contract of one who enters into such an employment not to carry elsewhere into competition with his employer confidential knowledge obtained from him. (*Little* v. *Gallus*, 4 App. Div. 569.) They are valuable to protect trade secrets but, apart from that purpose, they are unavailing to stifle competition.

On March 3, 1919, the five individual defendants who are the respondents, all of whom except Himer and Moffat had been in the employ of plaintiff, with others, organized the defendant Stampagraph Co., Inc., to conduct a competing business, carrying to it full knowledge of every detail of plaintiff's business and trade. Thereupon plaintiff brought this action for equitable relief, alleging that it was a breach of trust for the individual defendants to organize the rival corporation and to employ in its behalf the trade secrets of plaintiff and a breach of contract as well on the part of defendants Chadwick and Turner.

The trial court granted the relief prayed for, *first*, because plaintiff's employees became possessed of knowledge of secret processes while in its employ and, therefore, might not themselves use such knowledge or communicate it to others to the detriment of plaintiff, and *secondly*, because Chadwick and Turner had breached the negative covenants of their contracts of employment and were

engaging in a similar occupation conflicting with plaintiff's business and using plaintiff's trade secrets therein.

The Appellate Division reversed the judgment of the trial court. Recognizing the principle that employees are bound by express or implied contract not to disclose trade secrets and that courts of equity will restrain a party from making a disclosure of secrets communicated to him through and by means of his having been in a confidential employment (*Vulcan Detinning Co.* v. *American Can Co.*, 72 N. J. Eq. 387), the court limited its application to cases where plaintiff was employing in its business a secret process either developed by itself or the sole right to use which had been acquired by it from the discoverer of the process.

The Appellate Division further held that the contracts with Chadwick and Turner were not enforcible in equity as they " savored of servitude " and did not come within the rule in *McCall Co.* v. *Wright* (198 N. Y. 143), which held in substance that an important employee would be restrained on such contract from carrying business secrets to a rival concern.

A secret is nothing more than a private matter; something known only to one or a few and kept from others. It may be acquired by lawful means, as by discovery, or even by unfair means, without tracing title to the originator, and when so acquired it does not necessarily cease to be a secret which may be protected from unlawful competition. Secrecy may be absolute or relative. As bearing on the question of equitable relief, however, the question before us is not whether defendants make use of some process not generally known to the public but peculiarly within the knowledge of plaintiff and themselves, but whether defendants' knowledge of the process was obtained by them through and by means of the fact that Chadwick and Turner had been in plaintiff's employ. Employees may not gain knowledge of a secret and avail themselves of it for their private advantage against their

employer. But there is no betrayal of confidence when no secret is imparted.

The Appellate Division reversed the finding of the Special Term and found that the process was not a secret process. It upheld the defendants' claim that the secrets of the process were disclosed by the English patents; that any one of sufficient skill and experience could work out therefrom some method of transferring patterns or designs to fabrics by heat printing; that Scott and Chadwick possessed such knowledge when they came to this country.

Plaintiff contends that the findings to this effect are unsupported by the evidence. George Chadwick testified that he could make the mixture or the composition easily from the Scott patent so it would work all right. George H. Chadwick, who is a son of George Chadwick, testified that he had manufactured transfers by the formula contained in the Scott patent and transferred them by means of a hot iron. Such transfers were produced in court and put in evidence. Arthur Turner was found by the Appellate Division to have become familiar by observation with the process of transfer making before he entered plaintiff's employ. He said he knew the ingredients, well-known substances, in England where he had observed the weighing and the mixing, but he also said he had taken no part in manufacturing transfer stamps before coming to America. His evidence on this point is somewhat conflicting, but it permits the inference that he also had observed some of the processes of manufacture in England.

The fundamental process originated with the patents. George Chadwick, at least, brought practical knowledge of their use to plaintiff when he entered its employ. It is claimed by plaintiff that the patents do not disclose its improved machinery, the composition of the paper or even the formula itself, and that it is not practical to work from them. Defendants' contention is that the

results achieved were due merely to skill in manipulation acquired by experience. A plain question of fact was thus presented on which the Appellate Division had power to render final judgment. (Civil Practice Act, § 584.)

The findings of the appellate court that the fundamental processes were revealed by the English patents and that knowledge thereof was brought to plaintiff rather than obtained from it by the defendants Chadwick and Turner, are not without evidence to sustain them.

As to the restrictive covenants contained in the contracts of Chadwick and Turner, it is well established that equity will not enforce them specifically except to protect plaintiff's trade secrets. An employee will not be perpetually restrained from working for another except to prevent a breach of confidence as well as a breach of contract. (*McCall Co.* v. *Wright, supra.*) The surrender for an unlimited time of the right to use the skill, knowledge and experience which a workman brings to the services of his employer as a condition of such employment has never been enforced by injunction. (*Badische Aniline Und Soda Fabrick* v. *Schott, Segner & Co.,* [1892] 3 Ch. 447, 4'3; *Herbert Morris, Ltd.* v. *Saxelby,* [1916] 1 App. Cas: ( ), 714.) Plaintiff fails to disclose the difference, if any, L  veen the knowledge that Chadwick himself brought to it  d what was imparted to him while in its employ. If the Chadwick contract is not enforcible, the keystone is removed from plaintiff's arch. Chadwick is free to impart the information which makes the English patents workable. While his services were valuable and his withdrawal injurious to plaintiff's interests, such services are not found to be so peculiar or distinctive as to be indispensable, and the preventive remedy of injunction will not be applied to prevent a breach of contract on the ground that the services contracted for by him were special, unique and extraordinary. (*McCall Co.* v. *Wright, supra; Cort* v. *Lassard & Lucifer,* 18 Ore. 221.)

Plaintiff hired Chadwick and Scott to develop the process by means of knowledge they had acquired while working for Briggs under the English patents in England. It thereby acquired practical knowledge of processes shared only with a few. The burden was on it to establish not only the possession of trade secrets, but also the transmission thereof to defendants. The English patents were open to all. Knowledge obtained from them was not secret information obtained from plaintiff. Scott and Chadwick possessed it. Many printers on fabrics could learn enough therefrom to make transfer patterns. Any prospective competitor might do what plaintiff did — hire workmen away from the Briggs people in England and set up a rival establishment in this country. On the findings of the Appellate Division plaintiff is not entitled to equitable protection.

It is contended that the Appellate Division has no power to grant to defendants an additional allowance of costs; that such application can be made only to the trial court or court of original jurisdiction. The judgment of the Appellate Division in this case was a new and complete adjudication. (*Lamport* v. *Smedley*, 213 N. Y. 82, 84; *Herrman* v. *U. S. Trust Co. of N. Y.*, 221 N. Y. 143, 146.) The power to render such new decree as justice required was vested in the Appellate Division when the Code of Civil Procedure (§ 1317) was amended by Laws of 1912, chapter 318. The Appellate Division having rendered a new and different judgment herein, it follows that it may grant an additional allowance in this case under rule 45, General Rules of Practice, rule 200, Rules of Civil Practice.

The judgment appealed from should be affirmed, with costs.

HISCOCK, Ch. J., HOGAN, CARDOZO, McLAUGHLIN, CRANE and ANDREWS, JJ., concur.

Judgment affirmed.