NATIONAL STARCH PRODUCTS INC., Respondent, *v.* POLYMER INDUSTRIES INC., et al., Appellants.

First Department, May 24, 1948.

*William R. McDermott* of counsel (*Eugene Z. DuBose* and *Carleton S. Connor* with him on the brief; *Alexander & Green,* attorneys), for appellants.

*Edward A. Alexander* for respondent.

VAN VOORHIS, J. The defendants appeal from an order striking out two affirmative defenses. The action is by respondent National Starch Products, Inc., for an injunction to restrain the individual defendants, who were former employees of said corporation engaged in research, production and sales, from disclosing secret processes, formulae, and other trade secrets including lists of customers and methods of manufacture, use, application and sale of its products, and to restrain the use of these in the business of defendant Polymer Industries, Inc., in competition with plaintiff. The complaint also asks that each defendant be enjoined for a period of two years from engaging as employer, consultant, or in association with any other person, firm or corporation, or as agent or employee

for others, in any competing business in the sale or manufacture of any products which, during his employment, were manufactured, bought, sold or dealt in by plaintiff, within a radius of 500 miles of New York City or within the same radius of any other of plaintiff's offices or plants located in any part of the United States.

The answer contains two affirmative defenses that have been stricken out which this appeal seeks to have restored: (1) alleging that the processes and formulae devised and developed by the plaintiff for the manufacture of its products are known to and employed by at least ten other competing firms engaged in the same field as the plaintiff; *that such processes and formulae are generally available to the trade, without charge, from the manufacturers and suppliers of the various raw materials used in the manufacture of the products referred to and described in the amended complaint;* that the defendant Polymer Industries, Inc., as well as plaintiff are engaged in interstate and intrastate commerce, and that the object of the plaintiff in commencing this action is to stifle competition; and (2) that the negative covenants alleged in the complaint as part of the contracts of employment of the defendants to refrain from engaging in competition as employer, consultant or employee within 500 miles of New York City or within the same radius of any other of plaintiff's offices or plants in the United States, in the manufacture or sale of any products that were manufactured, bought, sold or dealt in by plaintiff, unreasonably restrain and interfere with the individual defendant's freedom of contract for the reason that defendant has plants and offices throughout the United States in such localities that the defendants could not engage in such employment anywhere in the United States; that, if enforced, these restrictive covenants would have the effect of depriving these several individual defendants of the right to earn their livelihoods, and be oppressive. In support of the second defense it is contended that the products of plaintiff, National Starch Products, Inc., are so numerous and so varied as to prevent the individual defendants from working for any chain grocery store, or manufacturer of paint or textiles in the United States.

The defendants ought to be allowed to plead these affirmative allegations as defenses, leaving it to the trial to determine whether they can be sustained. With respect to the first defense, it is of course true, as plaintiff's counsel contends, that there are other trade secrets than secret processes and formulae, such as customers' lists. A motion to strike out portions of an

answer does not furnish a suitable occasion to draw nice distinctions between the exact coverage of these terms, especially when they have been employed more or less indiscriminately in the complaint.

To the extent that the trade secrets sought to be protected relate to secret formulae, or industrial know-how in the processes of manufacture, or lists of customers, it is plain that the defendants should be enjoined from using them or communicating them to others to be used in competition with plaintiff — provided that they are truly secret. It is well established in the law of this subject that in order that a property right may inhere in a secret process or formula, it must be kept secret; that does not mean that a considerable number of persons may not know about it, provided that such information was imparted to them in confidence; on the other hand, if there has been a voluntary disclosure by plaintiff, or if the facts pertaining to the matter are a subject of general knowledge in the trade, then any property right has evaporated.

In the language of Judge TAFT, later Chief Justice of the Supreme Court of the United States: " The property in a secret process is the power to make use of it to the exclusion of the world. If the world knows the process, then the property disappears. There can be no property in a process, and no right of protection if knowledge of it is common to the world." (Quoted with other pertinent citations in *Sachs* v. *Cluett, Peabody & Co., Inc.*, 265 App. Div. 497, 501, affd. 291 N. Y. 772.)

The complaint herein is comprehensive in scope and embraces a large number of specific activities that are sought to be enjoined on the part of the defendants, not all of which are comprised by any single category above mentioned. The first affirmative defense, in alleging that plaintiff's processes and formulae are generally available to the trade without charge from the manufacturers and suppliers of the various raw materials used, states facts from which, if true, unless counteracted by other facts not mentioned, the conclusion of law flows that there is no property right in such processes and formulae belonging to plaintiff. The complaint does seek to enjoin more activities than the disclosure and utilization of such alleged secret formulae and processes; but the circumstance that plaintiff has prepared an omnibus complaint ought not to prevent the defendants from setting forth such defenses as they have against being enjoined from engaging in any of the particular activities alleged in the complaint. That does not mean that these are partial defenses; it means that, if established, they are

complete defenses against being restrained from doing that particular thing. Thus, while the formulae and processes of the plaintiff do not comprise all of its alleged trade secrets, a defense which alleges that neither said formulae nor processes are secret is a complete defense against being enjoined from disclosing or utilizing those particular alleged trade secrets.

An earnest argument has been made in plaintiff's behalf to the effect that it is not essential to the protection of these processes and formulae that they be secret, provided that they have been learned by the defendants while in the plaintiff's employ. In support of that argument portions of the opinion in *Kaumagraph Co.* v. *Stampagraph Co.* (235 N. Y. 1) have been quoted to the effect that " the question before us is not whether defendants make use of some process not generally known to the public but peculiarly within the knowledge of plaintiff and themselves, but whether defendants' knowledge of the process was obtained by them through and by means of the fact that Chadwick and Turner had been in plaintiff's employ. Employees may not gain knowledge of a secret and avail themselves of it for their private advantage against their employer. But there is no betrayal of confidence when no secret is imparted." (Pp. 7–8.)

The last sentence furnishes the key to what was decided, and the effect of the decision is to support the first defense herein. There is no betrayal of confidence unless there is a secret to be imparted. Chadwick and Turner were defendants; the proof showed that they had been in the employ of an English company which had patented the process prior to their coming to the United States and entering the employ of Kaumagraph Company. It was held that they could not be restrained by plaintiff therein from disclosing or utilizing for themselves formulae and processes which they had not learned from that plaintiff, whether secret or not; in the instant case the plaintiff, in attacking the first affirmative defense, is asking the court to hold the converse of that proposition, that former employees are to be restrained if they learned the information from the plaintiff, regardless of whether such information was secret or not. No such conclusion is to be drawn from the *Kaumagraph* case. The earlier part of the opinion therein points out that negative covenants unlimited as to time or place are valid as a basis for equitable relief only as they protect trade secrets acquired during a confidential employment; that means only where, in the language of the opinion, " plaintiff was employing in its business a secret process either developed by itself or the sole

right to use which had been acquired by it from the discoverer of the process. \* \* \* A secret is nothing more than a private matter; something known only to one or a few and kept from others.'' (P. 7.)

Likewise, *DuPont Powder Co.* v. *Masland* (244 U. S. 100, 102), points in an opposite direction from plaintiff's contention. It is true that in the opinion by Justice HOLMES the court said that '' Whether the plaintiffs have any valuable secret or not the defendant knows the facts, whatever they are, through a special confidence that he accepted. The property may be denied but the confidence cannot be. Therefore the starting point for the present matter is not property or due process of law, but that the defendant stood in confidential relations with the plaintiffs, or one of them. These have given place to hostility, and the first thing to be made sure of is that the defendant shall not fraudulently abuse the trust reposed in him.'' The context in which this language was employed is not what one might assume from reading respondent's brief. The court was not reviewing a final judgment; it was reviewing an order *pendente lite* which sought to manage the difficult problem of how to enable the defendant to present his defense without publishing what would be a trade secret if plaintiff were to prevail in the action. The suit was brought to enjoin defendant from using or disclosing secret processes of plaintiff's business, and the defense was what the first defense is in this action, namely, a denial that the said processes were secret and an allegation that they were well known to the trade. The United States Supreme Court apparently considered that to be a valid defense, if established, and the order appealed from was merely to regulate the procedure in trying out that question, which appears to have been regarded as the controlling issue in the action; the decision of the court permitted the defendant to make disclosure to his attorney and to the court, leaving it to the discretion of the court to permit revelation of the secrets later to expert witnesses, if it should appear to the court necessary for the defendant to call them. Thus the case cited is really an authority for the appellants.

It is to be borne in mind that the injunction sought herein is unlimited by time or place insofar as disclosure of what are alleged to have been trade secrets is concerned. Whether or not such an injunction is proper depends upon whether they are truly secrets. If they, or some of them, are already in the public domain, then no relationship of trust and confidence pertaining to such disclosed features is threatened. (*Clark Paper & Mfg. Co.* v. *Stenacher*, 236 N. Y. 312, 321; *Kaumagraph Co.* v. *Stampagraph Co.*, 235 N. Y. 1, *supra*; *Sachs* v. *Cluett, Peabody & Co.*,

*Inc.*, 265 App. Div. 497, affd. 291 N. Y. 772, *supra*.) If, as defendants allege, respondent's processes and formulae are well known in the trade, no injunction in reference thereto can be obtained.

While it is possible that disclosure of the customers' list and some other details of the business might, after a trial, be held to be prohibited, even if the formulae and processes of manufacture be public property, that would not void the first affirmative defense insofar as the formulae and processes are involved. It simply alleges that the formulae and processes are public, nor is this converted into a partial defense respecting them simply because plaintiff did not separately state and number its causes of action.

The circumstance that it might be possible to raise this point by denials is not controlling, as is stated in the opinion at Special Term. Respondent's argument has been that the content of the defense is insufficient in law. Section 242 of the Civil Practice Act authorizes the pleading of all grounds of defense which, if not raised, would be likely to take the opposing party by surprise. The defendants were not obliged to run the risk that their proofs would not be accepted at the trial for the reason that they had not apprised their adversary of the nature of their attack upon the validity of the causes of action alleged in complaint, on which issue in some respects they have the burden of proof. (*Brearton* v. *DeWitt*, 252 N. Y. 495; see especially, *Murray* v. *Cooper*, 268 App. Div. 411, affd. without opinion, 294 N. Y. 658.)

This does not depend upon the rule of clean hands; the point is that defendants have a right to allege affirmatively that plaintiff has no property right in the main items which it seeks to prevent defendants from utilizing or disclosing.

The second affirmative defense relates to the covenant by defendants to refrain for two years from working for any competing business within 500 miles of any of plaintiff's plants. Such contracts are valid if limited as to time and place. (*Diamond Match Co.* v. *Roeber*, 106 N. Y. 473; *Witkop & Holmes Co.* v. *Boyce*, 61 Misc. 126, and cases cited; *Barnard Bakeshops, Inc.*, v. *Dirig*, 173 Misc. 862; see *Kaumagraph Co.* v. *Stampagraph Co.*, 235 N. Y. 1, *supra*.) As has been pointed out, they may be valid even if unlimited, to the extent that they are drawn so as to prevent the disclosure of actual trade secrets which have been learned in confidence as a result of having been in plaintiff's employ. The limitation to two years and to the areas included in the 500-mile radii, was evidently incorporated in these agreements in order to reinforce the other provisions, and also to

come to the rescue in event that plaintiff should fail upon the issue of the secret and confidential nature of some of its formulae and processes, or of some of its other trade secrets. If it turns out that plaintiff has valuable and important trade secrets to be protected, the covenant not to engage in competing businesses may be valid in some respects regardless of any limitations of time or space.

The second affirmative defense alleges simply that plaintiff has so many plants and offices in the United States that the effect of the two-year limitation is to prevent defendants from competing anywhere in the country, and that the range of plaintiff's products is so wide as to prevent defendants, under this clause, from being employed in a great number of businesses, with the consequence that the restrictive covenants are oppressive, and, therefore, null and void. This might be material, in event that the proof should develop that this would be the effect of this covenant, and that there are not adequately important trade secrets to justify such a covenant.

It is possible, perhaps even probable, that no such fact situations as are alleged in the answer herein can be established by defendants, but they should be allowed the opportunity of doing so on the trial. Great care should be exercised by the trial court, as was done in *DuPont Powder Co.* v. *Masland* (244 U. S. 100, *supra*) to guard against the disclosure during the trial of what may ultimately prove to be trade secrets belonging to the plaintiff. Wise use should be made of the discretionary powers of the trial court in the conduct of the trial to that end. The merits of the case cannot be tried, however, on these motions addressed to the answer.

The order should be reversed, with $20 costs and disbursements to the appellants and the two affirmative defenses reinstated.

DORE and CALLAHAN, JJ. concur; PECK, P. J. and COHN, J. dissent: In our opinion the Justice at Special Term correctly analyzed the pleadings and properly ruled on the motion. The order appealed from should be affirmed.

Order reversed, with $20 costs and disbursements to the appellants and the two affirmative defenses reinstated. Settle order on notice.