**Paul D. DENNY, Appellant,**

v.

**Mark J. ROTH, Appellee.**

No. 13083.

Court of Civil Appeals of Texas.

Galveston.

Dec. 6, 1956.

Rehearing Denied Jan. 3, 1957.

Wm. N. Bonner, Houston, for appellant.

Raymond H. Wilson, Houston, for appellee.

GANNON, Justice.

Suit by Paul D. Denny, doing business as Paul's Bakery, appellant, against Mark·J. Roth, plaintiff's former route driver employee, appellee, to enforce a negative covenant in appellee's employment contract with appellant. Pending final relief plaintiff prayed for a temporary restraining order and on hearing for a temporary injunction. On presentation of his sworn pleading in chambers, the trial court issued the tem-

porary restraining order prayed for and set the matter for hearing on plaintiff's application for temporary injunction. A hearing was had on July 24, 1956. This resulted in the entry of an order dissolving the temporary restraining order in part and continuing it in part. By the temporary injunction entered after hearing defendant was enjoined from "entering into any type of competition with plaintiff or soliciting plaintiff's customers on and along [a certain] El Campo route." From this interlocutory order plaintiff appeals, assigning as error, constituting an abuse of discretion, the failure of the trial court to grant temporary relief according to the contract as written.

At the hearing on application for temporary injunction evidence was introduced and the court made certain findings and conclusions. These are set out in the order continuing in part and dissolving in part the terms of the temporary restraining order. No question and answer statement of facts developed at the hearing accompanies the transcript, but the transcript contains an agreed statement entered into by the parties under the provisions of Rule 378, T.R.C.P. Under that rule the approval of the trial court is not required. This brief agreed statement follows:

"On or about May 4, 1949, Defendant Mark J. Roth applied to Plaintiff and obtained employment to drive a bakery truck, solicit customers, and deliver bakery products on a commission basis, and the Defendant then signed a contract reading:

" 'By This contract and agreement Paul D. Denny, operating and doing business in Harris County, Texas, as Paul's Bakery, herein called Employer, does hereby employ Mark Roth herein called Employee, as a truck driver and salesman under the following terms and conditions:

" '1. This contract may be cancelled at any time by either Employer or Employee.

" '2. Employee shall work and service such route and territory as may be designated and assigned to him by Employer, and which shall be subject to change from time to time by Employer.

" '3. Employer shall furnish Employee with a truck, and with gas and oil required to operate same; necessary repairs thereto to be made at Employer's expense. Employee shall be liable to Employer for any damages to said truck which are caused by the result of Employee's negligence.

" '4. Employee shall be paid by Employer weekly a commission of fourteen (14%) per cent on sales made and collected for. No products other than those manufactured and sold by Employer shall be sold by Employee without the written approval of employer.

" '5. Employee shall deposit with Employer at the time of the execution hereof a cash bond in the sum of $150.00, or Employer may withhold from Employee's commissions the sum of $5.00 per week until such sum is accumulated such bond to be returned to Employee upon the termination hereof if Employee is not indebted to Employer, otherwise such sum or so much thereof as may be necessary, shall be applied on such indebtedness.

" '6. As a part of the consideration for the execution hereof by Employer, the Employee agrees that he will not for a period of one year from the termination hereof (whether this agreement is terminated by Employer or Employee) engage or work in the manufacturing or selling of any products in competition to those now or then being manufactured or sold by Employer within a radius of one hundred (100) miles of Houston, Texas, either for himself or for any other person, firm or corporation.'

"Plaintiff then and now owns and operates a substantial bakery, using some fifteen or more drivers of delivery trucks and requiring each of them to sign a contract of the type above quoted. This Defendant was given a route in the City of Houston over various streets, and this continued for some fifteen months until about August·11,

1950, at which time, and until May 30, 1951, he was given a route called the 'Liberty Route' eastward from the City Limits of Houston through Dayton, Liberty, etc. From about May 31, 1951 to July 26, 1952 Defendant was assigned a route called the 'El Campo Route', through Stafford, Richmond, Rosenberg, Wharton, etc. and about the last mentioned date Defendant voluntarily resigned from Plaintiff's service and entered the insurance business for about ten months; and on May 8, 1953 Defendant again applied to Plaintiff for employment and the court finds for the purpose of this hearing (Notwithstanding the Defendant's denial) that the Defendant again signed a contract similar to that quoted in Plaintiff's Petition, and this continued to the end of June, 1956, when Defendant voluntarily left Plaintiff's service; and on July 1, 2 and 3 the Defendant, with his own truck sold donuts, pies and cakes of the same type made by Plaintiff and formerly sold by Defendant for Plaintiff to Plaintiff's customers on and along said El Campo Route, being the same customers to whom on the previous day and days he had sold Plaintiff's products of like kind and appearance.

"Defendant readily admitted that all times while in Plaintiff's employ he had been fairly treated, had earned good and satisfactory commissions; and the competitive products which he sold Plaintiff's customers until enjoined, the Defendant and his family made in their own kitchen.

\* \* \* \* \* \*

"The Defendant contends, and the Court concluded as a matter of law, that the first contract signed about May 4, 1949 was wholly terminated and relieved the Defendant of any obligation twelve months after his first resignation from Plaintiff's employ on July 26, 1952.

"The Court also upheld the defendant's contention that neither contract would preclude the Defendant for any period of time from competing with Plaintiff and soliciting his customers formerly served by De-

fendant except on and along the El Campo route, where he had worked since May 8, 1953."

The trial court's findings appearing in the order appealed from are as follows:

"1. Notwithstanding the fact that the Defendant Mark J. Roth executed the contract set forth in Plaintiff's Petition on two separate occasions, first about May 4, 1949, and lastly on May 8, 1953, at which time last mentioned he was re-employed (after an absence of about ten months); and notwithstanding the fact that during the first period of Employment, May 4, 1949, to August 10, 1950, the Defendant worked the City of Houston, and from August 11, 1950 to May 30, 1951, the defendant worked the route from the City Limits easterly to Dayton, Liberty, and beyond, and thereafter from May 31, 1951 to July 26, 1952 the Defendant worked the route from the City Limits westerly through Stafford, Richmond and El Campo, and about the last mentioned date voluntarily left Plaintiff's employ to go into the insurance business. And about May 8, 1953 Defendant re-entered Plaintiff's employment and again signed a contract as set forth in Plaintiff's Petition, and the Defendant again had the same El Campo route which he had when he voluntarily resigned July 1, 1956, as alleged by Plaintiff. Yet the Court concludes that said contracts do not in fact and in law preclude the Defendant from entering into a competitive business with Plaintiff and soliciting Plaintiff's customers to whom Defendant formerly made deliveries, *except only on the El Campo route as to which the Defendant is precluded for a period of a year beginning July 1, 1956, from entering into competition with Plaintiff or soliciting his customers. \* \* \*."* (Emphasis supplied.)

Except in cases where we are called upon to apply settled law to undisputed facts, the sole question on appeal from interlocutory orders granting or refusing temporary injunctions is whether the trial court abused its discretion in entering the

order appealed from. 24–a Tex.Jur., Sec. 265, page 382.

■ Contracts for negative covenants similar to the one here under review are well known to our law. Since the refusal of a writ of error by the Supreme Court in McAnally v. Person, Tex.Civ.App., 57 S.W. 2d 945, it appears that when such contracts have been performed in whole or in part, they are enforceable even when but for such performance they would be held bad for indefiniteness. Compare May v. Lee, Tex.Civ.App., 28 S.W.2d 202. In McAnally v. Person, supra [57 S.W.2d 949], it is said: " 'One cannot successfully plead a want of consideration, or unilateralness, in a contract which he has performed in whole or in part.' "

■ However, such contracts constitute an exception to the rule condemning contracts in restraint of trade and their validity and enforceability, as an exception to such rule, are determined in each case in relation to reasonableness. And they are valid and enforceable to the extent, and only to the extent, that they are affirmatively shown to be reasonably necessary for the protection of the good will and business of the employer and neither oppressive to the employee nor contrary to the public interest. See Grace v. Orkin Exterminating Co., Inc., Tex.Civ.App., 255 S.W.2d 279, 283, and cases there cited and reviewed. We quote from this comprehensive and well considered opinion:

"The restrictive covenants are in restraint of trade and are valid only if shown to be within exceptions to the general rule. See: Wissman v. Boucher, [150] Tex. [326] 240 S.W.2d 278, Super Maid Cook-Ware Corporation v. Hamil, 5 Cir., 50 F.2d 830, and other decisions cited herein. For general discussions see: Chapter XLVIII of Williston's 1937 Ed., entitled: 'Illegal Bargains: Contracts in Restraint of Trade.' See, also, Restatement, Contracts, Sec. 516(f). A valuable collection of authorities has been made in Arthur Murray

Dance Studios of Cleveland v. Witter, Ohio Com.Pl., 105 N.E.2d 685.

*"The burden of proof is on the former master to bring the covenant within an exception which will support it.* City Ice Delivery Co. v. Evans, Tex Civ.App., 275 S. W. 87; Carpenter v. Southern Properties, Inc., Tex.Civ.App., 299 S.W. 440; Kaumagraph Co. v. Stampagraph Co., 235 N.Y. 1, 138 N.E. 485." (Emphasis supplied.)

■ That the burden of proof is on the former master to go beyond the terms of his contract and by satisfactory evidence to bring the relief which he seeks within the zone of reasonableness protected on the basis of the stated principles is well established. City Ice Delivery Co. v. Evans, supra; Oak Cliff Ice Delivery Co. v. Peterson, Tex.Civ.App., 300 S.W. 107; and Super Maid Cook-Ware Corporation v. Hamil, supra. It appears from these decisions that restrictive covenants are not wholly invalid because, as drawn, they may go somewhat beyond the limits of reasonableness, either in respect to time or area. On the other hand, so far as the time and area delimited by the contract may be reasonable as of the time of trial and hearing, the covenant is enforceable in equity. This probably is because equity, which is the only forum in which such contracts may be enforced, is not so much concerned with strictly legal norms as with justice, fair play and the public interest.

■ In the present appeal we do not find on the record presented any abuse of discretion by the trial court in the entry of the order which followed the hearing on the application for temporary injunction. Appellant's effort on this appeal is to have us extend the terms of the temporary injunction to cover the full circle of all the territory within a radius of 100 miles of the City of Houston, except as voluntarily conceded by him. There is nothing in the agreed statement, except the covenant itself, to show, nor has appellant attempted by evidence to show, that such an order is necessary for the protection of his good

**948**

will and business. Absent such a showing, appellant is not entitled to an order of the extent which he seeks. The trial court, on the evidence which he heard, has determined that appellant's good will and business will be equitably protected by the relief granted. We see in this no abuse of discretion.

Affirmed.

CODY, J., not sitting.