Joseph F. Gagliakdi, J.
In an action for a permanent injunction and damages, plaintiff moves for an order granting a preliminary injunction. By order to show cause dated January 30, 1974 the defendants were temporarily enjoined from soliciting plaintiff’s customers. On the argument of this matter I continued the restraining order pending disposition of the within motion.
Plaintiff is a domestic corporation located in the City of White Plains, Westchester .County and does business in this county as an employment agency. Defendant Vans is a former employee of plaintiff and is now associated with defendant T. J. Harbrowe Associates, Inc. The corporate defendant is engaged in the same business as plaintiff and is also located in the City of White Plains.
On January 15, 1973 plaintiff and the individual defendant executed a contract of employment. At the time of execution defendant Vans was approximately 20 years and 10 months old. The contract states that Vans is employed as a 1 ‘ Placement Counselor ” with duties to be determined by plaintiff and is to be paid a weekly wage as a draw against commissions which he may earn. The contract, .which consists of four typewritten pages, was signed by defendant Vans on each page. The instrument further provides that the term of employment shall be for three years. Paragraph four contains a restrictive covenant which forms the nexus of this suit. It is there provided:
" Both parties to this Agreement recognize that the knowledge, training, and information gained concerning the Company list of employer-employee con *790 tacts and customers, advertising and interviewing techniques, manuals, systems and forms, constitute the most vital part of the company’s business and are by their very nature, trade secrets and confidential knowledge gained only through employment herein; and that services are to be rendered under this Agreement by the employee are special, unique, and shall be gained only through special training and instruction by the company. Therefore, upon termination of his/her employment, whether termination of the Agreement, by wrongful discharge or otherwise, employee shall not directly or indirectly, within Westchester County of the State of .New York (said area comprises the business territory of the Company) enter into or engage in the same or similar occupation with a permanent or temporary employment service or any similar business, or perform any services, either as an individual, partner, joint venture, employee, agent, for any person, corporation, or partnership for a period of one (1) year after date of termination of his/her employment hereunder; and further shall never disclose or use the company’s list of employer-employee contacts and customer, advertising and interviewing techniques, manuals, systems and forms, all of which constitute the company’s trade secrets and confidential knowledge or such other information gained through employment hereunder, The employee further covenants and agrees that he will not solicit the trade or patronage of any customer or client of the Employer in the County of Westchester, in the State of New York during said period of one (1) year for himself/herself or for any firm engaged in the same or similar business to that of the Employer.”
iSaid .paragraph also provides for an injunction against the employee for violation of its provisions and for liquidated damages in the amount of $250 per business day, not to exceed $25,000. The contract further provides that either party may terminate the contract on sufficient prior notice (not relevant here) and that both parties waive their right to a jury trial concerning matters ‘ ‘ in any way connected with this contract ’ \
On January 16, 1974 defendant Yaus and plaintiff terminated their relationship. Yaus thereupon was employed by the corporate defendant in virtually the same capacity as he previously held with plaintiff. Plaintiff claims that during Yaus’ one-year relationship with it he “ became a super star performer ” and acquired confidential information that he is now using on behalf of the corporate defendant. Plaintiff contends that it specially trained Yaus and entrusted certain exclusive corporate clientele to him. This clientele, it is asserted, is maintained in a confidential' list ‘ ‘ which constitutes one of the most valuable secrets of the plantiff’s business ” and represents a large expense in terms of advertising and developing leads regarding key employers. Defendant Yaus was entrusted with four key accounts: Procter and Gamble, Inc., Liberty Mutual Insurance Company, Wohl Shoes, and Friendly Ice Cream. Plaintiff submitted an affidavit by the personnel recruiter of Friendly Ice Cream in which he states that on January 23, 1974 he was solicited by telephone by Mr. Yaus on behalf of the coy *791 porate defendant but refused to do business with him. Plaintiff also avers, on information and belief, that customer lists of major employer clients are missing and are possessed by Mr. Vaus. Additionally, plaintiff states that it had hired Vaus as assistant manager in a supervisory capacity.
Defendant Vaus urges that the restrictive covenant is not enforceable because he repudiated the contract. He also contends that the covenant is illegal and against public policy. Vaus states that he does not possess any confidential list and his special training supplied by plaintiff “ consisted of learning how to use the yellow pages of the Westchester Telephone Book”. To enforce the covenant, Vaus argues, would be to deprive him of his right to earn a living. He asserts that his services were not unique and that others in plaintiff’s employ are capable of performing the work previously assigned to him. Furthermore, Vaus states that the personnel director of Friendly Ice Cream told him that he was no longer in charge of personnel in Westchester County and gave him the names of those persons who were.
The corporate defendant avers it had no knowledge of the restrictive covenant when it hired Vaus. It contends that in the employment service industry there are no confidential lists and the major employers plaintiff refers to do not use plaintiff’s services exclusively. Both defendants cross-move for dismissal and related relief.
Defendant Vaus in a first affirmative defense and on this motion raises his lack of capacity to be bound by the restrictive covenant. The court shall pass on this issue first.
At common law and by statute a minor is a person who has not yet reached 21 years of age (Sternlieb v. Normandie Nat. Securities Corp., 263 N. Y. 245; Domestic Relations Law, § 2). Contracts executed by infants are voidable at their election (Sternlieb v. Normandie Nat. Securities Corp., supra; 2 Williston, Contracts [3d ed.], § 226). Upon reaching majority the infant ‘ ‘ must disaffirm within a reasonable time after becoming of age, or his silence will be considered a ratification ” (Sternlieb v. Normandie Nat. Securities Corp., supra, p. 248). In other words, where a contract has been executed, disaffirmance on the ground of infancy must occur within a reasonable time after attaining the age of 21 and ratification depends on the facts of the particular case (28 N. Y. Jur., Infants, §§ 28, 52; 7 Encyclopedia N. Y. Laws, Contracts, §§ 2203-2205, 2208; Ann. 5 ALR 2d 7).
*792 By various statutes this «State has sought to equalize economic relationships between infants and adults in certain business transactions (see, e.g., General Obligations Law, § 3-101 [18-year-olds are bound by reasonable and provident business contracts concerning the ‘ ‘ business in which the infant was engaged ”] ;* Education Law, § 281 [16-year-olds liable on education loans]; Insurance Law, § 145 [15-year-olds bound on purchase of life insurance]; Insurance Law, § 145-a [18-year-olds bound on purchase of accident and health insurance]; former Personal Property Law, § 83 [infant liable for necessaries furnished him, now Uniform Commercial Code, § 1-103]). The purpose of the diverse legislation is to permit infants to conduct certain essential business transactions while assuring those with whom they have such transactions that infancy will not be a defense or ground for repudiation of the contractual obligations. Additionally, it has been held that an infant may appoint an agent (Casey v. Kastel, 237 N. Y. 305; Matter of Goodchild, 160 Misc. 738, 753) and discharge or hire his own counsel (Matter of Anonymous v. Anonymous, 70 Misc 2d 584; Griston v. Stousland, 186 Misc. 201).
Plaintiff argues that Yaus ratified the contract by his continued acceptance of wages and employment for approximately 10 months after attaining his majority. This position has merit and the court would be inclined to rule as a matter of law that the contract was ratified through Yaus’ inaction prior to January 15, 1974. However, the court prefers to rest its determination on this issue on another ground: that an infant who executes and performs under a contract containing a restrictive covenant is bound by the latter clause whether or not the contract is ratified and is otherwise binding (Mutual Milk and Cream Co. v. Prigge, 112 App. Div. 652; Ann. 17 A. L. R 863). The rationale of this rule as expressed in Prigge (supra), is that infants would not be employed in businesses having trade secrets and their ilk unless employers were permitted to bind infants to restrictive covenants as security for their endeavors. The rule is a salutary one and is to be applied here. Indeed, it might be noted that in Prigge (supra), the infant, aged 19, repudiated and went to work for a competitor during his minority but was held bound to a restrictive covenant which prohibited solicitation *793 of the first employer’s customers for a three-year period. Infants may not with impunity disregard restrictive covenants.
The remaining issue is whether the restrictive covenant in question offends public policy. This question has been recently characterized as follows (Service Systems Corp. v. Harris, 41 A D 2d 20, 22-24):
“ The issue is whether the restrictive covenant is enforceable by injunctive relief. A resolution of that problem depends upon two factors: (1) whether the provisions of the covenant are reasonable in scope and (2) whether the services performed by the [employee] are unique or extraordinary. * * *
11 Employment contracts with restrictive covenants have not always been looked upon with favor by the courts. They were considered as contracts in general in restraint of trade and void as against public policy (Diamond Match Co. v. Roeber, 106 N. Y. 473, 479-484). With changing economic conditions, it eventually became clear that contracts restricting a person from carrying on a particular business were not per se to be regarded as in restraint of- trade, and, therefore, void (Wood v. Whitehead Bros. Co., 165 N. Y. 545, 550-551; Kaumagraph Co. v. Stampagraph Co., 235 N. Y. 1).
“Postemployment restraints present an effective method of preventing unscrupulous competition by employees who may attempt to appropriate valuable trade information and to take advantage of customer relationships for their own unfair personal gain. On the other hand, these covenants restrict the economic mobility of employees and their personal freedom. There are certainly policy considerations which necessitate looking with disfavor upon approving the loss of a man’s ability to earn a living and courts are careful to balance the interests of employer, employee and the public welfare. Employers should be afforded reasonable protection from the pirating of their business by disloyal employees who agree by contract to refrain from such unfair activities [citations omitted].
“Are the restrictions fair and do they have as their only objective the protection of the legitimate interests of the employer? Are they of advantage to the employer only without giving sufficient consideration to making them as burdenless as possible to the employee? These are the questions which must be answered before courts will deny or sustain enforcement. Basic to the consideration are five factors: (1) the restriction must be necessary for the employer’s protection; (2) the time must be reasonable; (3) the geographical area must' be reasonable; (4) the burden of the employee must not be unrea *794 sonable; and (5) the general public must not be harmed [citations omitted]. The facts of each case control as to whether a restrictive covenant is reasonable, [citations omitted].
‘ ‘ More particularly, the type of contract before us involves managerial and supervisory personnel who have access to confidential information and develop close relationships with customers. Customer relationship is a very important factor in determining whether the covenant will be supported by the courts. An employer has sufficient interest in retaining present customers to support an employee covenant where the employee’s relationship with the customers is such that there is a substantial risk that the employee may be able to divert all or part of the business (citations omitted). Also of special significance is the issue as to confidential business information and whether the method, technique or know-how of the business has been developed by an employer through considerable investment of time, effort or money [citations omitted] ”.
The above-quoted excerpts are set forth at length because they succinctly summarize the complicated factors to be weighed in adjudicating matters of this kind. In brief, restrictive covenants are not to be liberally construed (Purchasing Assoc. v. Weitz, 13 N Y 2d 267; Scientific Mgt. Inst. v. Mirrer, 27 A D 2d 845) but the legitimate interest of the employer will be enforced even in the absence of a negative covenant, upon proof that customer names are not readily ascertainable to those outside the employer’s business (Town & Country House & Home Serv. v. Newberry, 3 N Y 2d 554, 558; Duane Jones Co. v. Burke, 306 N. Y. 172). On the other hand, where the contract does not prevent ordinary competition (see Lynch v. Bailey, 300 N. Y. 615; Rochelle v. Amendola, 11 A D 2d 786), incidental agreements not to solicit customers, subject to the over-all test of reasonableness, will be enforced by the courts (Purchasing Assoc. v. Weitz, 13 N Y 2d 267, supra; Bates Chevrolet Corp. v. Haven Chevrolet, 13 A D 2d 27, affd. 13 N Y 2d 644; Markowitz v. Tabakin, 250 App. Div. 768). The agreement must be reasonable in terms of space and time (Karpinski v. Ingrasci, 28 N Y 2d 45). The one-year period involved herein is not unreasonable (New York Wet Wash Laundry Co. v. Unger, 170 App. Div. 761; see Bates Chevrolet Corp. v. Haven Chevrolet, 13 A D 2d 27, affd. 13 N Y 2d 644, supra; Cosmos v. Crohan, 258 App. Div. 1056) and the geographical limitation prohibiting solicitation in Westchester .County, plaintiff’s sole business area, is clearly coextensive with the former employer’s interests (New York Wet Wash Laundry Co. v. Unger, 170 App. Div. *795 761, supra; see Karpinski v. Ingrasci, 28 N Y 2d 45, supra; cf. Paramount Pad Co. v. Baumrind, 4 N Y 2d 393). The covenant does not preclude defendant Vaus from earning a livelihood hut merely enjoins him from soliciting plaintiff’s customers and from engaging in a similar occupation in this county for one year. Vaus is contractually free to seek similar employment in any other county in this State during the prohibited time period. Furthermore the presence of a liquidated damage clause does not preclude enforcement by injunction of the restrictive covenant (Karpinski v. Ingrasci, 28 N Y 2d 45, supra).
Under these circumstances the covenant is prima facie valid. However, a problem exists regarding the nature of plaintiff’s customers; whether they are confidential and exclusive. Absent proof that plaintiff has customers that may be classified as confidential or difficult to otherwise ascertain, the restrictive covenant will not be enforced (Leo Silfen, Inc. v. Cream, 29 N Y 2d 387, 392-395; Clark Paper and Mfg. Co. v. Stenacher, 236 N. Y. 312; cf. Hudson Val. Propane Corp. v. Byrne, 24 A D 2d 908). “ There is no betrayal of confidence when no secret is imparted” (Kaumagraph Co. v. Stampagraph Co., 235 N. Y. 1, 8). Indeed, despite the Friendly Ice Cream incident, plaintiff has not established that Vaus has solicited customers to its detriment (Jaymar’s v. Schwartz, 37 Misc 2d 314). Plaintiff argues that names of its customers, while perhaps available in local telephone directories, would not reveal the precise person of each major corporate customer with whom an employment agency must deal. It is further argued that the names of such persons are confidential and known to very few employees in plaintiff’s service and were learned only after great expenditure in time, money and effort. Defendants have not successfully rebutted these claims. The court cannot say that such persons might be easily located in a telephone directory. Defendant Vaus was a supervisory employee who dealt with such persons under plaintiff’s mantle and may not now assert that he has proprietary rights to their continued patronage.
The prerequisites for the issuance of a temporary injunction are: (1) likelihood of ulitmate success on the merits; (2) irreparable injury absent granting the preliminary injunction; and (3) a balancing of the equities (Albini v. Solork Assoc., 37 A D 2d 835). Plaintiff has met this initial burden. The purpose of a temporary injunction is to prevent further perpetration of an alleged wrong until a trial, without determining the merits of permanent relief (International Ry. Co. v. Barone, 246 App. Div. 450). An injunction pendente Ute restores the status quo *796 as it existed prior to the alleged violation and its grant or denial lies within the sound discretion of the court (Colson v. Pelgram, 259 N. Y. 370; Paul v. Munger, 47 N. Y. 469). The court is faced with the delicate task of ¡balancing the equities and relative hardship of the parties in determining whether or not the injunction shall issue (Boomer v. Atlantic Cement Co., 26 N Y 2d 219). The court must, where possible, preserve the claimed legitimate interests of the employer while making the restrictions as burdenless as possible to the employee (Service Systems Corp. v. Harris, 41 A D 2d 20, supra).
At bar, the employer’s interest would seemingly be adequately protected by prohibiting solicitation of those major corporate customers claimed to be confidential. Plaintiff does not seriously urge that other than the four major customers mentioned at the outset of this opinion, that plaintiff is utilizing confidential information in soliciting other customers. Indeed, defendants would dispute this latter contention. Additionally, the prohibition against employment in Westchester County, while valid per se, really does not protect the plaintiff’s interest and tends to impose an impermissible burden on defendant Vans. Thus, it would appear that the restrictive covenant is overbroad. Vans ought to be able to continue in the corporate defendant’s employ with the provision that he not solicit those major corporate customers of plaintiff’s previously mentioned. At one time a restraint beyond the limits of the employer’s interest to be protected would have been declared wholly invalid (Paramount Pad Co. v. Baumrind, 4 N Y 2d 393, 396, supra). However, the Court of Appeals recently held that courts have the power to sever “ the impermissible from the valid and uphold the covenant to the extent that it is reasonable ” (Karpinski v. Ingrasci, 28 N Y 2d 45, 51). This principle gives effect to the interests of all parties and the general public and enables the court to weigh the equities more intelligently than heretofore permissible. Enforcement of restrictive covenants is no longer an “ all or nothing” proposition. Consequently, upon the authority of the Karpinski case the court will grant the temporary injunction solely as to those major employers enumerated in plaintiff’s affidavit in support of the motion (Procter and Gamble, Inc., Liberty Mutual Insurance Company, Wohl Shoes, and Friendly Ice Cream). Upon the posting of security by plaintiff in the amount of $10,000, defendant Yaus is enjoined from “ soliciting ” or “ servicing ” plaintiff’s customers (as set forth above), knowledge of which [derives from Yaus’ former relationship with plaintiff. Additionally, the corporate defend *797 ant is similarly enjoined. The order to be submitted hereon shall define the above verbs and shall be effective, pending a disposition after trial on the merits. The parties are entitled to an immediate trial of the issues raised. Accordingly, the court directs that all pretrial proceedings be completed no later than April 1, 1974. Thereafter, upon the filing of a note of issue and payment of any court fees the matter is referred to Special Term, Part III for trial.
In sum, the motion for a preliminary injunction is granted to the extent indicated in the opinion. The cross motion to dismiss is denied, and that part of the cross motion which seeks damages and unpaid wages is denied without prejudice to renewal at the trial. Submit order on notice within 10 days after the date of this decision which order shall provide for service of a copy thereof1 on the Calendar 'Clerk within 5 days after entry thereof.

 The applicability of this statute has not been urged. It may be argued that an infant over 18 years of age who performs services on a commission basis is within the statutory scheme. The argument has not been presented and the court declines to adjudicate the matter on this ground.